**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| Carl J. Mayer, on behalf of himself and all others similarly situated, ) | |
| )
| Plaintiffs, ) | |
| ) | |
| v. ) | **JURY TRIAL DEMANDED** |
| ) | |
| Bill Belichick and The New England Patriots. ) | |
| ) | **CLASS ACTION** |
| Defendants. ) | |
| ) | |

**COMPLAINT**

Plaintiffs, by their counsel, individually and on behalf of all others similarly situated, as and for their Complaint against Defendants assert upon information and belief as follows:

**PRELIMINARY STATEMENT OF THE CASE**

1.      This case is brought by a New York Jets season ticket-holder on behalf of all similarly situated New York Jets season ticket-holders and other New York Jets ticket-holders against the Defendant New England Patriots and their coach, Defendant Bill Belichick.   The core of this action is that the Defendants, during a game with the New York Jets on September 9, 2007, instructed an agent of the Defendants to surreptitiously videotape the New York Jets coaches and players on the field with the purpose of illegally recording, capturing and stealing the New York Jets signals and visual coaching instructions.   The Defendants were in fact subsequently found by the National Football League ("NFL") to have improperly engaged in such conduct.   This violated the contractual expectations and rights of New York Jets ticket-

Dockets.Justia.com

holders who fully anticipated and contracted for a ticket to observe an honest match played in compliance with all laws and regulations.

2. Plaintiffs contend that in purchasing tickets to watch the New York Jets that, as a matter of contract, the tickets imply that each game played will be played in accordance with NFL rules and regulations as well as all applicable federal and state laws. Plaintiffs contend that Defendants tortuously interfered with their contractual relations with the New York Jets in purchasing the tickets. They further claim that Defendants violated the New Jersey Consumer Fraud Act and the New Jersey Deceptive Business Practices Act. Plaintiffs also claim that the Defendants violated federal and state racketeering laws by using the National Football League as an enterprise to carry out their illegal scheme. Because the Defendants have been found in other games by other teams to have illegally used video equipment, this action seeks damages for New York Jets ticket-holders for all games played in Giants stadium between the New York Jets and the New England Patriots since Bill Belichick became head coach in 2000.

## JURISDICTION AND VENUE

3. This court has subject matter jurisdiction over the federal claims pursuant to 28 U.S.C. §1331, 28 U.S.C. §2201, 12 U.S.C. §3416, 12 U.S.C. §3417, 12 U.S.C. §3418, and over the state claims pursuant to 28 U.S.C. §1332 and 28 U.S.C. §1367.

4. Plaintiffs are informed, believe and thereon allege that Defendant has sufficient contacts with this district generally and, in particular, with the events herein alleged, that Defendants are subject to the exercise of jurisdiction of this court over the person of such Defendants and that venue is proper in this judicial district pursuant to 28 U.S.C. §1391. The

proper venue for this is in the Newark vicinage because the acts complained of occurred in northern New Jersey.

   5.     Plaintiffs are informed, believe and thereon allege that, based on the places of business of Defendants identified above and/or on the national reach of Defendants, a substantial part of the events giving rise to the claims herein alleged occurred in this district and that Defendant and/or agents of Defendant may be found in this district. Plaintiffs and Defendants routinely engaged in business and transactions within this jurisdiction.

   6. The amount in controversy exceeds $75,000.

## PARTIES

   7.     Plaintiff Carl J. Mayer is a season ticket-holder and, as such, specifically purchased a ticket and parking pass for the game between the New York Jets and the New England Patriots on September 9 , 2007.  Plaintiff is a life-long New York Jets fan and resides in Mercer County, New Jersey.

   8.     Defendant New England Patriots  has its headquarters at One Patriot Place, Foxborough, Massachusetts 02035.

   9. Defendant Bill Belichick resides at 116 Meadowbrook Road, Weston, Massachusetts 02493.

## FACTUAL ALLEGATIONS RELATED TO ALL COUNTS

10. On September 9, 2007 the New York Jets and the New England Patriots played a professional football game in Giants Stadium, located in the Meadowlands in East Rutherford, New Jersey. Plaintiffs held tickets and parking passes to that game.

11. As first reported on the news website ESPN.com, the NFL began looking into claims a New England Patriots employee was videotaping signals by Jets coaches on New York's sideline during the season opener game played on September 9, 2007.

12. ESPN.com reported that NFL security confiscated a video camera and tape from a Patriots employee during New England's 38-14 victory over the Jets that day. The employee was accused of aiming his camera at the Jets' defensive coaches, who were sending signals out to the players, sources told ESPN.

13. The New England Patriots denied that they had violated League rules. New England cornerback Ellis Hobbs said publicly he was unwilling to believe his team had cheated. "We put too many hours in as individuals and a team to have to go out and cheat," he said. "If it's true, obviously, we're in the wrong. But I'm standing behind my team, my coaches. I don't think we do that stuff."

14. This was not the first time Defendants had been accused of cheating. In November 2006, the Green Bay Packers professional football team found a man wearing a Patriots staff credential and carrying a video camera on the sidelines at Lambeau Field, their home field. Teams are allowed to have a limited number of their own videographers on the sideline during the game, but they must have a credential that authorizes them to shoot video, and wear a yellow vest. But Packers spokesman Jeff Blumb said the person in question didn't have the right credential and wasn't wearing a yellow vest, so Packers security asked him to put away the camera and he was escorted out of the stadium.

4

15. After the videotape of the New York Jets game was confiscated on September 9, 2007, Patriots coach Bill Belichick apologized, saying: "Although it remains a league matter, I want to apologize to everyone who has been affected, most of all ownership, staff and players." He refused to take questions from reporters about the NFL investigation, however, and stormed out of a weekly press conference with reporters on September 12, 2007.

16. On September 13, 2007, the NFL found the Defendants guilty of violating all applicable NFL rules by engaging in a surreptitious videotaping program. The New England coach, Bill Belichick, was fined $500,000 and the Patriots were ordered to pay $250,000 for stealing an opponent's defensive signals. NFL Commissioner Roger Goodell also ordered the Patriots to give up next year's first-round draft choice if it reaches the playoffs and second- and third-round picks if it doesn't. "This episode represents a calculated and deliberate attempt to avoid longstanding rules designed to encourage fair play and promote honest competition on the playing field," Goodell said in a letter to the Patriots. The Commissioner specifically imposed penalties on the Defendant Patriot organization because "Coach Belichick not only serves as the head coach but also has substantial control over all aspects of New England's football operations. His actions and decisions are properly attributed to the club." Patriot's owner Robert Kraft refused to comment. The New York Jets issued a statement saying: "We support the commissioner and his findings."

17. The specific NFL rule violated by Defendants states: "no video recording devices of any kind are permitted to be in use in the coaches' booth, on the field, or in the locker room during the game." The rules also specifically state that all video for coaching purposes must be shot from locations "enclosed on all sides with a roof overhead." That was re-emphasized in a memo sent Sept. 6 to NFL head coaches and general managers. In it, Ray Anderson, the league's executive vice president of football operations wrote: "Videotaping of any type, including but

not limited to taping of an opponent's offensive or defensive signals, is prohibited on the sidelines, in the coaches' booth, in the locker room, or at any other locations accessible to club staff members during the game."

18. Belichick appeared to accept full responsibility, stating on September 13, 2007: "Once again, I apologize to the Kraft family and every person directly or indirectly associated with the New England Patriots for the embarrassment, distraction and penalty my mistake caused. I also apologize to Patriots fans and would like to thank them for their support during the past few days and throughout my career." But then, bizarrely, he attempted to deny responsibility, stating: " We have never used sideline video to obtain a competitive advantage while the game was in progress…With tonight's resolution, I will not be offering any further comments on this matter. We are moving on with our preparations for Sunday's game."

19. The New York Jets ticket-holders who have purchased tickets to watch the Jets play the New England Patriots are not willing to move on. On information and belief, Defendants deployed their unlawful videotape program during every game played against the Jets in Giants stadium from 2000 through 2007, a total of eight games. The Defendants have turned over to the NFL many videotapes for further examination. Meanwhile, Jets fans have collectively spent well over $61 million on tickets to watch eight supposedly honest, competitive games between the New York Jets and New England Patriots between 2000 and 20007. This action seeks restitution for the money spent on games that were systematically and illegally tainted by the actions of defendants.

## CLASS ACTION ALLEGATIONS

20.     Pursuant to Federal Rules of Civil Procedure, Rule 23 (a) and (b), Plaintiff Carl J.

Mayer brings this action on behalf of himself and a Nationwide Class of similarly situated

persons defined as:

>       All New York Jets season ticket-holders and other ticket-holders who purchased
>       tickets to games between the New York Jets and the New England Patriots in Giants
>       stadium since Bill Belichick became the head coach of the New England Patriots in 2000.

21.     The Nationwide Class seeks certification of claims for declaratory relief,

injunctive relief and damages pursuant to  18 U.S.C. § 1961 et. seq.,   12 U.S.C. § 3417 and 12

U.S.C. § 3418.

22.     Plaintiffs also bring the claims on behalf of the following New Jersey Subclass

defined as:

>        All individuals that are residents of the State of New Jersey and that purchased
>       tickets to watch the New York Jets play the New England Patriots between 2000 and
>       2007 in Giants stadium.

23.     The New Jersey Subclass seeks certification of claims for declaratory and

injunctive relief, and for restitution.

24.     Excluded from the Nationwide Class and New Jersey Subclass are the officers,

directors, and employees of Defendants, and the legal representatives, heirs, successors, and

assigns of Defendants.

25.     This action is brought as a class action and may properly be so maintained

pursuant to the provisions of the Federal Rules of Civil Procedure, Rule 23. Plaintiffs reserve the

right to modify the Nationwide Class and the New Jersey Subclass definitions and the class

period based on the results of discovery.

26.     **Numerosity of the Nationwide Class and New Jersey Subclass:** Members of

the Nationwide Class and New Jersey Subclass are so numerous that their individual joinder is

impracticable. The precise numbers and addresses of members of the Nationwide Class and New Jersey Subclass are unknown to the Plaintiffs. Plaintiffs estimate that the Nationwide Class consists of tens of thousands of members and the New Jersey Subclass consists of thousands of members. The precise number of persons in both the Nationwide Class and New Jersey Subclass and their identities and addresses may be ascertained from Defendant's records or the records of interested parties.

27.     There is a well-defined community of interest in the questions of law and fact involved affecting the members of the Nationwide Class and New Jersey Subclass. These common legal and factual questions include: (a) Whether Defendants have engaged in racketeering by using the enterprise of the NFL to further an illegal scheme in violation of Racketeer Influenced and Corrupt Organizations Act ("RICO") 18 U.S.C. 1961 et.seq. (b) Whether Defendants committed consumer fraud and engaged in unlawful business practices in violation of the New Jersey Consumer Fraud Act N.J.S.A. 56:8-1 et. seq. and whether, as regards the New Jersey Subclass members', the Defendants engaged in unfair, unlawful and/or fraudulent business practices in violation of the New Jersey Consumer Fraud Act N.J.S.A. 56:8-1 et. seq.; (c) Whether Plaintiffs and New Jersey Subclass members are entitled to restitution, disgorgement of profits, or other equitable relief to remedy Defendant's unfair, unlawful and/or fraudulent business practices; (d) Whether Plaintiffs and class members are entitled to recover compensatory, statutory and punitive damages, whether as a result of Defendant's fraudulent, illegal and deceitful conduct, and/or otherwise; and (e) Whether Plaintiffs and class members are entitled to an award of reasonable attorneys' fees, pre-judgment interest, and costs of this suit.

28.     **Typicality:** Plaintiffs' claims are typical of the claims of the members of the Nationwide Class and New Jersey Subclass because Plaintiff is a season ticket-holder and

lifelong fan of the New York Jets. Plaintiffs and all members of the Nationwide Class and New Jersey Subclass have similarly suffered harm arising from Defendant's violations of law, as alleged herein.

29. **Adequacy:** Plaintiffs are adequate representatives of the Nationwide Class and New Jersey Subclass because their interests do not conflict with the interests of the members of the classes they seek to represent. Plaintiffs have retained counsel competent and experienced in complex class action litigation and intend to prosecute this action vigorously. Plaintiffs and their counsel will fairly and adequately protect the interests of the members of the Nationwide Class and New Jersey Subclass.

30. This suit may also be maintained as a class action pursuant to Federal Rules of Civil Procedure, Rule 23(b)(2) because Plaintiffs and both the Nationwide Class and New Jersey Subclass seek declaratory and injunctive relief, and all of the above factors of numerosity, common questions of fact and law, typicality and adequacy are present. Moreover, Defendant has acted on grounds generally applicable to Plaintiffs and both the Nationwide Class and New Jersey Subclass as a whole, thereby making declaratory and/or injunctive relief proper.

31. **Predominance and Superiority:** This suit may also be maintained as a class action under Federal Rules of Civil Procedure, Rule 23(b) (3) because questions of law and fact common to the Nationwide Class and New Jersey Subclass predominate over the questions affecting only individual members of the classes and a class action is superior to other available means for the fair and efficient adjudication of this dispute. The damages suffered by each individual class member may be relatively small, especially given the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. Furthermore, it would be virtually impossible for the class members, on an individual

basis, to obtain effective redress for the wrongs done to them. Moreover, even if class members themselves could afford such individual litigation, the court system could not. Individual litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and the court system presented by the complex legal issue of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of a single adjudication, economy of scale and comprehensive supervision by a single court.

## COUNT I

### Tortuous Interference With Contractual Relations.

32. Plaintiffs repeat and incorporate herein by reference the allegations in the preceding paragraphs of this complaint, as if set forth fully herein.

33. Plaintiff and members of the class had a contract with the New York Jets under which the ticket-holders purchased the right to attend and observe the matches between the New York Jets and the New England Patriots.

34. Plaintiff and members of the class purchased tickets and entered into the contract with the New York Jets with the understanding, both express and implied, that the game will be played honestly and according to established rules and conditions that are known in advance by all parties.

35. The understanding that the New York Jets football games are to be played honestly and according to the agreed rules and conditions is a material condition of the ticket-holders' contract.

36.Defendants' intentionally and knowingly interfered with the ticket-holders' contractual right and expectation to an honest match played according to the agreed rules and conditions by illegally recording and capturing the New York Jets' coaching and player signals; Defendants did so for their own private benefit seeking to gain an illegal advantage over the New York Jets.

37. Accordingly, Defendants tortuously interfered with the contract and relationship between the members of the nationwide class and the New York Jets and are liable to plaintiff and other members of the class for restitution of the ticket prices for each of said games along with interest, attorney's fees and cost of suit.

## COUNT II

### Common Law Fraud.

38. Plaintiffs repeat and incorporate herein by reference the allegations in the preceding paragraphs of this complaint, as if set forth fully herein.

39. Defendants contracted repeatedly with the New York Jets and/or the NFL to play home football games at the New York Jets' stadium at which it was known and understood that New York Jets ticket-holders would pay for the right to observe and attend the game.

40. New York Jets ticket-holders purchased tickets to said games under the express and implied condition that the game is to be played honestly and according to agreed rules and conditions.

41. Defendants individually and in concert violated this expectation and understanding by illegally recording and capturing New York Jets coaching and player signals, a direct violation of the agreed rules and conditions.

11

42. The ticket-holders including plaintiff and other members of the class, are direct beneficiaries, i.e., third party beneficiaries, of the contract between the Defendants and the New York Jets and/or the NFL.

43. Defendants entered into the game contracts with the New York Jets and/or the NFL with the intent to violate the agreed rules and conditions or entered into the individual games with such knowing intent.

44. Defendants concealed and omitted to make any disclosure of their intent to illegally record and capture the New York Jets coaching and player signals, an act that violated the agreed rules and conditions of the game contract.

45. It is a material condition to the purchase of tickets by Plaintiff and other members of the class that the participants in the game will pay honestly and according to the agreed rules and conditions.

46. Defendants concealed their intent to violate this material understanding.

47. Defendants committed the violation of the rule by stealth and surreptitious conduct by recording and capturing New York Jets signals by the use of a non-uniformed agent on the field.

48. Plaintiff and other members of the class relied to their detriment in purchasing tickets to the New York Jets-Patriots games.

49. Plaintiff and other members of the class were injured by their payment of money for the New York Jets – Patriots games.

50. It is a material and agreed fact, understanding and condition that the NFL games are to be played honestly and to be a match of contestants following the same essential rules and conditions. Plaintiff and, upon information and belief, other members of the class, would not

have purchased tickets to the games if the Patriots and Belichick had disclosed that they intended to play the game corruptly and in violation of an essential and material game rule.

51. Accordingly, Defendants are liable in fraud to plaintiff and other members of the class for monies paid by the ticket-holders for the New York Jets' home games with the Patriots, as set forth above, along with interest, attorney's fees and costs of suit.

52. Defendants intentionally and knowingly acted to violate the game rule and knew or should have known that such rule is material to the honest performance of the game contract.

53. Defendants conspired to violate the game rule and did so by stealth and deception and have been previously caught committing similar acts.

54. Such violation corrupted the sport of football. Accordingly, Plaintiff and the class respectfully seek punitive damages be assessed against Defendants, along with interest, attorneys fees and costs of suit.

## COUNT III

### Deceptive Business Practices, N.J.S.A. 2C:21-7

55. Plaintiffs repeat and incorporate herein by reference the allegations in the preceding paragraphs of this complaint, as if set forth fully herein.

56. By the aforesaid acts, Defendants violated N.J.S.A., 2C:21-7.

57. Accordingly, defendants are liable for the value of tickets purchased by Plaintiff and other members of the class for the New York Jets – Patriots games, along with treble damages, interest, attorney's fees and cost of suit.

## COUNT IV

13

58. Plaintiffs repeat and incorporate herein by reference the allegations in the preceding paragraphs of this complaint, as if set forth fully herein.

59. By their above described acts, Defendants, in violation of N.J.S.A. 2C:41-2, Defendants, individually and jointly, through a pattern of racketeering activity, (A) derived income, directly or indirectly, through certain enterprises owned and/or controlled by them that are engaged in the playing and performance of professional football games; (B) acquired and/or maintained, directly or indirectly, an interest in or control of the Enterprises, which affected trade or commerce; and (C) conducted and/or participated, directly or indirectly, in the conduct of the Enterprises' affairs.

60. Upon information and belief, the Enterprises are (a) the New England Patriots football organization, (b) the National Football League; c) the New York Jets football organization.

61. The Enterprises engaged employees to perform and play the professional football games and to carry out the scheme to defraud and deceive.

62. Defendants engaged in a practice and pattern of racketeering by engaging in at least two incidents of racketeering conduct, one of which occurred after the effective date of N.J.S.A. 2C:41-1 *et seq.* and the last of which occurred within 10 years after a prior incident of such activity.

63. Defendants, by the above described acts, fraudulently induced consumers of New Jets tickets to purchase said tickets by concealing their intent to violate the agreed rules and conditions of the game contracts with the New Jersey Jets and/or the NFL and concealed and omitted to disclose to the ticket-holders their intent to subvert and corrupt the New York Jets

14

home games by illegally recording and capturing the New York Jets coaching and player signals in violation of N.J.S.A. 2C:21-7 (deceptive business practices), causing damage to Plaintiff and class members.

64. Accordingly, Defendants are liable under the New Jersey racketeering statutes to the Plaintiff and other class members for restitution of the ticket prices paid for said games, along with treble damages, interest, attorneys fees and costs of suit.

## COUNT V

### The Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C., 1961(a), (b), (c), (d)

65. Plaintiffs repeat and incorporate herein by reference the allegations in the preceding paragraphs of this complaint, as if set forth fully herein.

66. Defendants, by their above described acts, engaged in a pattern of racketeering activity through the performance of at least two acts of racketeering within a ten year period through the use of the mails and/or the interstate wires as a material element of their scheme to defraud New York Jets ticket-holders.

67. Defendants received income derived, directly or indirectly, from a pattern of racketeering activity to use or invest or used, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce in violation of 18 U.S.C. 1962(a).

68. Defendants through a pattern of racketeering activity acquired or maintained, directly or indirectly, an interest in or control of an enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce in violation of 18 U.S.C. 1962(b).

15

69. Defendants employed themselves or others in, or were ,associated with an enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity in violation of 18 U.S.C. 1962(c).

70. Defendants conspired to violate subsections (a), (b), or (c) of 18 U.S.C. 1962, as described in 18 U.S.C. 1962(d).

71. The above-described enterprises consisted of a) the New England Patriots football organization, b) the National Football League and c) the New York Jets football organization.

72. Defendants, by the above described acts, committed predicate acts through the use of the mails or interstate wires in furthering their fraudulent inducement of consumers of New Jets tickets to purchase said tickets by concealing their intent to violate the agreed rules and conditions of the Defendants' game contracts with the New Jersey Jets and/or the NFL and concealed and omitted to disclose to the ticket-holders their intent to subvert and corrupt the New York Jets home games by illegally recording and capturing the New York Jets coaching and player signals, causing damage to Plaintiff and class members.

73. Accordingly, Defendants are liable under to Plaintiff and other class members for restitution of the ticket prices paid for said games, along with treble damages, interest, attorney's fees and costs of suit.

## COUNT VI

### Violation of Ticket-holders rights as Third Party Beneficiaries.

74. Plaintiffs repeat and incorporate herein by reference the allegations in the preceding paragraphs of this complaint, as if set forth fully herein.

75. Plaintiff and other class members is an intended third party beneficiary of the contracts between the New York Patriots and the New York Jets and/or the NFL.

76. The understanding that the New York Jets football games are to be played honestly and according to the agreed rules and conditions is a material condition of the Patriots' contract with the New York Jets and/or the NFL and the ticket-holders are the intended third party beneficiaries of said contracts.

77. Defendants violated and interfered with the third party benefit to the ticket-holders by illegally recording and capturing the New York Jets' coaching and player signals.

78. Accordingly, are liable to plaintiff and other members of the class as third party beneficiaries of the Patriots' contract with the New York Jets and/or the NFL for restitution of the ticket prices for each of said games along with interest, attorney's fees and cost of suit.

## COUNT VII

## CONTRACT

79. Plaintiffs repeat and incorporate herein by reference the allegations in the preceding paragraphs of this complaint, as if set forth fully herein.

80. Plaintiffs plead in the alternative that they have an implied or quasi contract with the New England Patriots who violated such contract by illegally recording and capturing the New York Jets' coaching and player signals.

81. Accordingly, Defendants are liable to Plaintiff and other members of the class as third party beneficiaries of the Patriots' contract with the New York Jets and/or the NFL for restitution of the ticket prices for each of said games along with interest, attorney's fees and cost of suit.

## COUNT VIII

## New Jersey Consumer Fraud Act N.J.S.A. 56:8-1 et. Seq.

82. Plaintiffs repeat and incorporate herein by reference the allegations in the preceding paragraphs of this complaint, as if set forth fully herein.

83. Defendants conduct violated The New Jersey Consumer Fraud Act N.J.S.A. 56:8-1 et. Seq. by committing a fraud, deception, misrepresentation, unconscionable business practice, concealment, suppression and omissions in conducting their business in the State of New Jersey.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs for themselves and all others similarly situated respectfully request that the Court:

A.     Declare that Defendant's fraud, tortuous interference with contractual relations and violations of NFL policy as alleged herein violates applicable law including without limitation:

(i) The New Jersey Consumer Fraud Act  N.J.S.A. 56:8-1 et. Seq.

(ii)  The Racketeer Influenced and Corrupt Organization Act. 18 U.S.C. § 1961 et.seq.

(iii)  The common law of tortuous interference with contractual relations.

(iv) The New Jersey Racketeering Law N.J.S.A., 2C:41-2

(v)  The common law of fraud and contract.

(vi) Deceptive Business Practices, N.J.S.A. 2C:21-7

B.      Award equitable relief, including without limitation, a preliminary and permanent injunction prohibiting Defendants' continued or future videotaping in violation of NFL rules and New Jersey and federal law:

(i) Pursuant to The Racketeer Influenced and Corrupt Organization Act. 18 U.S.C. § 1961 et.seq., as to the Plaintiffs and the Nationwide Class; and

(ii) Pursuant to the New Jersey Consumer Fraud Act N.J.S.A. 56:8-1 et. seq., and the Deceptive Business Practices, N.J.S.A. 2C:21-7

C.      Award statutory damages to the extent permitted by law to each Plaintiff and class member in the sum of:

(i) actual damages sustained by the customers in the amount of $61,6000,000 for the amount paid by New York Jets ticket-holders to watch eight fraudulent games between the New England Patriots and the New York Jets between 2000 and 2007.

(ii) treble damages pursuant to The Racketeer Influenced and Corrupt Organization Act. 18 U.S.C. § 1961 et.seq.and the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 et. seq. for a total amount of compensatory damages of $184,800,000.00.

D.      Award punitive damages to the extent permitted by law to each Plaintiff and class member, including without limitation:

(i) An appropriate sum pursuant to The Racketeer Influenced and Corrupt Organization Act. 18 U.S.C. § 1961 et.seq.

(ii) An appropriate sum pursuant to the New Jersey Consumer Fraud Act N.J.S.A. 56:8-1 et. seq.

19

E.     Award to Plaintiffs attorneys' fees and other costs of suit to the extent permitted by law, including without limitation pursuant to The Racketeer Influenced and Corrupt Organization Act. 18 U.S.C. § 1961 et.seq. and the New Jersey Consumer Fraud Act. N.J.S.A. 56:8-1 et. Seq.

F.     Award restitution, disgorgement, and all other relief allowed under the New Jersey Consumer Fraud Act as to the New Jersey Subclass.

G.     Grant such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs hereby request a jury trial for all issues triable by jury including, but not limited to, those issues and claims set forth in any amended complaint or consolidated action.

DATED: September 28, 2007                    CARL J. MAYER, ESQ., on behalf of
                                            himself and all others similarly situated.


                                            By: /s/ Carl J. Mayer, Esq.


                                            CARL J. MAYER, ESQ.
                                            MAYER LAW GROUP LLC
                                            66 Witherspoon Street, Suite 414
                                            Princeton, NJ 08542
                                            Telephone: 609/921-8025
                                            Facsimile: 609/921-6964



                                            _____
                                            BRUCE I. AFRAN, ESQ.
                                            10 Braeburn Drive
                                            Princeton, NJ 08540
                                            Telephone : 609-924-2075