Stephen M. Orlofsky
New Jersey Resident Partner
David C. Kistler
**BLANK ROME LLP**
301 Carnegie Center Drive, Suite 301
Princeton, NJ 08540
Telephone:  (609) 750-7700
Facsimile:  (609) 750-7701

and

Daniel L. Goldberg *( pro hac vice pending)*
Charles L. Solomont *(pro hac vice pending)*
Lisa E. Kirby *(pro hac vice pending)*
**BINGHAM MCCUTCHEN LLP**
150 Federal Street
Boston, MA 02110-1726
Telephone:  (617) 951-8000
Facsimile:  (617) 951-8736

*Attorneys for Defendants*

THE NEW ENGLAND PATRIOTS, LP AND
BILL BELICHICK

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CARL J. MAYER, ON BEHALF OF HIMSELF AND ALL OTHER SIMILARLY SITUATED,<br><br>       Plaintiffs,<br><br>  vs.<br><br>BILL BELICHICK, THE NEW ENGLAND PATRIOTS, and THE NATIONAL FOOTBALL LEAGUE,<br>       Defendants. | CIVIL ACTION NO. 07-4671 (GEB)<br><br>HON. GARRETT E. BROWN, Chief D.J.<br><br>Return Date:  November 3, 2008<br><br>ORAL ARGUMENT REQUESTED |

## MEMORANDUM OF LAW OF DEFENDANTS THE NEW ENGLAND PATRIOTS, LP AND BILL BELICHICK  IN SUPPORT OF THEIR MOTION TO DISMISS

# TABLE OF CONTENTS

I.    THE PLAINTIFF'S ALLEGATIONS .................................................................1

II.   SUMMARY OF ARGUMENT ......................................................................2

III.  LEGAL STANDARD FOR MOTION TO DISMISS..........................................6

IV.   ARGUMENT:  EACH INDIVIDUAL CAUSE OF ACTION AGAINST THE
      PATRIOTS FAILS TO STATE A CLAIM FOR RELIEF AND MUST BE
      DISMISSED .................................................................................................6

      1.    Count I - Tortious Interference With Contractual Relations ...................6

      2.    Count II - Common Law Fraud ........................................................11

      3.    Count III - Deceptive Business Practices, N.J.S.A. 2C:21-7.................13

      4.    Count IV - New Jersey Racketeering, N.J.S.A. 2C:41-2.......................13

      5.    Count V - The Racketeering Influenced and Corrupt Organization Act, 18
            U.S.C. § 1962(a), (b), and (c) ........................................................14

      6.    Count VI - Violation Of Plaintiff's Rights As A Third Party Beneficiary ............23

      7.    Count VII - "Contract"...................................................................24

      8.    Count VIII - New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 et. seq. .............25

V.    CONCLUSION...............................................................................................28

099999.00200/50362190v.I

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006) ................................................22

*B.F. Hirsch v. Enright Refining Co.*, 751 F.2d 628 (3d Cir. 1984) ...............................17

*Baisch v. Gallina*, 346 F.3d 366 (2d Cir. 2003) ............................................................22

*Callahan v. A.E.V., Inc.*, 182 F.3d 237 (3d Cir. 1999) ..................................................22

*Camden Iron and Metal, Inc. v. Bomar Resource, Inc.*, 719 F. Supp. 297 (D.N.J. 1989) ..............9

*Casper v. Paine Webber Group, Inc.*, 787 F. Supp. 1480 (D.N.J. 1992) ......................16

*Citell v. Aviles*, 2007 WL 3243932 (D.N.J. Nov. 2, 2007) .............................................15

*In re College Bound Consolidated Litigation*, 1995 U.S. Dist. LEXIS 10684 (S.D.N.Y. July 31, 1995) ..........................................................................................................22

*Cooper Hosiery Mills, Inc. v. Honeywell International, Inc.*, 2007 WL 3243854 (D.N.J. Nov. 1, 2007) ................................................................................................................9

*DiGiorgio Corp. v. Mendez and Co.*, 230 F. Supp. 2d 552 (D. N.J. 2002) ...................11

*Dravo Corp. v. Robert B. Kerris, Inc.*, 655 F.2d 503 (3d Cir. 1981) .............................24

*Elbex Video, Ltd. v. Tyco Intern., Ltd.*, 2008 WL 1375883 (D.N.J. Apr. 9, 2008) ........6

*Eli Lilly and Co. v. Roussel Corp.*, 23 F. Supp. 2d 460 (D.N.J. 1998) ...................12, 22

*F.C.V., Inc. v. Sterling National Bank*, 2006 WL 1319822 (D.N.J. May 12, 2006) .....27

*Fineman v. Armstrong World Industrial, Inc.*, 774 F. Supp. 225 (D. N.J. 1991), *aff'd in part, rev'd in part on other grounds*, 980 F.2d 171 (3d Cir. 1992), *cert. denied*, 507 U.S. 921 (1993) ..............................................................................................................10

*Grand Street Artists v. General Electric Co.*, 19 F. Supp. 2d 242 (D.N.J. 1998) ..........24

*Holmes v. Sec. Investor Protection Corp.*, 503 U.S. 258 (1992) ...................................22

*Johnston v. Tampa Sports Authority*, 530 F.3d 1320 (11th Cir. 2008) ...........................7

*Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406 (3d Cir. 1991) .....................15, 16

*Kennedy Theater Ticket Serv. v. Ticketron, Inc.*, 342 F. Supp. 922 (E.D. Pa. 1972) ......7

*Kost v. Kozakiewicz*, 1 F.3d 176 (3d Cir. 1993) ..............................................................6

ii

*Kramer v. Scientific Control Corp.*, 534 F.2d 1085 (3d Cir. 1976)................................................1

*Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153 (3d Cir. 1993)..............................10, 11, 16, 18

*Longmont United Hospital v. Saint Barnabas Corp.*, 2007 WL 1850881 (D.N.J. Jun. 26, 2007)................................................................................................................................22

*Lorenz v. CSX Corp.*, 1 F.3d 1406 (3d Cir. 1993) ........................................................................17

*Lum v. Bank of America*, 361 F.3d 217 (3d Cir. 2004)............................................................19, 20

*Maertin v. Armstrong World Industrial, Inc.*, 241 F. Supp. 2d 434 (D.N.J. 2002) ......................12

*Magnum v. Archdiocese of Philadelphia*, 2007 WL 3257209 (3d Cir. 2007)..............................20

*McLaughlin v. Anderson*, 962 F.2d 187 (2d Cir. 1992)................................................................20

*NXIVM Corp. v. Sutton*, 2007 U.S. Dist. LEXIS 46471 (D.N.J. Jun. 27, 2007) ...........................7

*Naporano Iron & Metal Co. v. America Crane Corp.*, 79 F. Supp. 2d 494 (D.N.J. 1999) ...........26

*Neitzke v. Williams*, 490 U.S. 319 (1989) .......................................................................................6

*Oscar v. University Students Co-Operative Association*, 965 F.2d 783 (9th Cir. 1992)...............21

*Ove v. Gwinn*, 264 F.3d 817 (9th Cir. 2001)..................................................................................21

*Papasan v. Allain*, 478 U.S. 265 (1986) .......................................................................................15

*Parker v. Howmedica Osteonics Corp.*, 2008 WL 141628 (D.N.J. Jan. 14, 2008)......................26

*Pereira v. U.S.*, 347 U.S. 1 (1954).................................................................................................20

*Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008).......................................................6

*Poling v. K. Hovnanian Enterprises*, 99 F. Supp. 2d 502 (D.N.J. 2000)................................19, 20

*Reves v. Ernst & Young*, 507 U.S. 170 (1993)...............................................................................18

*Rose v. Bartle*, 871 F.2d 331 (3d Cir. 1989) .................................................................................15

*Shearin v. E.F. Hutton Group, Inc.*, 885 F.2d 1162 (3d Cir. 1989)..............................................16

*Stern v. Halligan*, 158 F.3d 729 (3d Cir. 1998) ...........................................................................13

*Tele-Save Merchandising Co. v. Consumers Distrib. Co.*, 814 F.2d 1120 (6th Cir. 1987)...........11

*Township of Marlboro v. Scannapieco*, 545 F. Supp. 2d 452 (D.N.J. 2008)................................20

iii

*Trans World Technologies, Inc. v. Raytheon Co.*, 2007 WL 3243941 (D.N.J. Nov. 1, 2007) ............................................................................................................23

*U.S. Express Lines, LTD. v. Higgins*, 281 F.3d 383 (3d Cir. 2002)...............................8

*University of Maryland at Baltimore v. Peat, Marwick, Main & Co.*, 996 F.2d 1534 (3d Cir. 1993) ....................................................................................................18

*Woods Corp. Associates v. Signet Star Holdings, Inc.*, 910 F. Supp. 1019 (D. N.J. 1995)...........10

## STATE CASES

*Berman v. Gurwicz*, 189 N.J. Super. 89, 458 A.2d 1311 (Ch. Div. 1981), *aff'd*, 189 N.J. Super. 49, 458 A.2d 1289 (App. Div. 1983).........................................................11

*Bickett v. Buffalo Bills, Inc.*, 472 N.Y.S.2d 245 (N.Y. Sup. Ct. 1983) .............................7

*Castillo v. Tyson*, 701 N.Y.S.2d 423 (N.Y. App. Div. 2000) ...........................................23

*Cohen v. Home Insurance Co.*, 30 N.J. Super. 72, 552 A.2d 654 (App. Div. 1989)....................24

*Debra F. Fink, D.M.D., MS, PC v. Ricoh Corp.*, 365 N.J. Super. 520, 239 A.2d 942 (Law Div. 2003) ................................................................................................27

*Del Tufo v. National Republican Senatorial Committee*, 248 N.J. Super. 684, 591 A.2d 1040 (Ch. Div. 1991) ...................................................................................25

*Fenwick v. Kay America Jeep, Inc.*, 72 N.J. 372, 371 A.2d 13 (1977)..............................26

*Gennari v. Weichert Realtors*, 148 N.J. 582, 691 A.2d 350 (1997) (emphasis added) ...............12

*Graziano v. Grant*, 326 N.J. Super. 328, 741 A.2d 156 (App. Div. 1999)..........................9

*Iliadis v. Wal-Mart Stores, Inc.*, 191 N.J. 99, 922 A.2d 710 (2007)..............................24

*Jewish Ctr. of Sussex County v. Whale*, 86 N.J. 619, 432 A.2d 521 (1981) ........................11

*Leon v. Rite Aid Corp.*, 340 N.J. Super. 462, 774 A.2d 674 (App. Div. 2001) .....................26

*McGarry v. Saint Anthony of Padua Roman Catholic Church*, 307 N.J. Super. 525, 704 A.2d 1353 (App. Div. 1998) ..........................................................................9

*Miller v. America Family Publishers*, 284 N.J. Super. 67, 663 A.2d 643 (Ch. Div. 1995)...........26

*Neveroski v. Blair*, 141 N.J. Super. 365, 358 A.2d 473 (App. Div. 1976) .........................25

*New Jersey Bank v. Palladino*, 77 N.J. 33, 389 A.2d 454 (1978) ..................................9

iv

*New Jersey Citizen Action v. Schering-Plough Corp.*, 367 N.J. Super. 8, 842 A.2d 174 (App. Div. 2003) ..................................................................................................27

*O'Loughlin v. National Committee Bank*, 338 N.J. Super. 592, 770 A.2d 1185 (App. Div. 2001) ........................................................................................................................25

*In re Opinion of the Justices*, 143 N.E. 808 (Mass. 1924).................................................7

*Port Liberte Homeowners Association, Inc. v. Sordoni Const. Co.*, 393 N.J. Super. 492, 924 A.2d 592 (App. Div. 2007) ...................................................................................13

*Printing Mart-Morristown v. Sharp Electronics Corp.*, 116 N.J. 739, 536 A.2d 31 (1989) ...........7

*Shubert v. Nixon Amusement Co.*, 83 A. 369 (N.J. 1912).................................................7

*State v. Ball,*, 141 N.J. 142, 661 A.2d 251 (1995) .........................................................13

*State v. Kuklinski*, 1989 WL 260275 (N.J. Super. Ct. Law Div. Feb. 15, 1989) ...........................14

*VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 641 A.2d 519 (1994) .........................................24

*Viviano v. CBS, Inc.*, 251 N.J. Super. 113, 597 A.2d 543 (App. Div. 1991)................................11

*Wells v. Wilbur B. Driver Co.*, 121 N.J. Super. 185, 296 A.2d 352 (Law Div. 1972)....................9

*Wendling v. Pfizer, Inc.*, 2008 WL 833549 (N.J. Super. Ct. App. Div. Mar. 31, 2008)................26

*Yarde Metals, Inc. v. New England Patriots Ltd. Partnership*, 834 N.E.2d 1233 (Mass. App. Ct. 2005).........................................................................................................7

## FEDERAL STATUTES

18 U.S.C. § 1341 ...........................................................................................................19

18 U.S.C. § 1961 ......................................................................................................13, 19

18 U.S.C. § 1962(a) ................................................................................14, 15, 16, 17, 18

18 U.S.C. § 1964(c) ......................................................................................................20

Fed. R. Civ. P. 9(b) ............................................................................................19, 20, 26

## STATE STATUTES

N.J.S.A. 2C:21-7.........................................................................................................13

N.J.S.A. 2C:41-2..........................................................................................................13

N.J.S.A. 56:8-1............................................................................................................25

099999.00200/50362190v.1

N.J.S.A. 56:8-2 .................................................................................................................25

**MISCELLANEOUS**

27A Am. Jur. 2d, *Entertainment and Sports Law*, § 42 (2008) ......................................7

Jed S. Rakoff and Howard W. Goldstein, *RICO: Civil and Criminal Law and Strategy* §
  1.04(1)(d)(i) ...............................................................................................................19

*Restatement (Second) of Torts* § 766, comment p ..................................................10, 11

099999.00200/50362190v.1

Defendants the New England Patriots, LP and their Head Coach Bill Belichick (together, the "Patriots") hereby move to dismiss in its entirety the amended complaint filed by plaintiff Carl J. Mayer (the "Complaint" or the "Cmplt.").[1]  Based on nothing more than the Patriots' alleged infraction of a National Football League rule, the Complaint presumes the viability of legal theories that have never been recognized by any court.  If permitted to proceed, the Complaint would open up a Pandora's Box of litigation to every sporting event patron unhappy about the participants' on-field performance or their compliance with any rules of play.

## I.    THE PLAINTIFF'S ALLEGATIONS

The plaintiff claims that, during a September 2007 football game between the Patriots and the New York Jets at Giants Stadium, the Patriots violated a League playing rule.  There are literally scores of rules promulgated by the NFL that govern conduct both on-the-field and off-the-field.  Violations of NFL rules can result in on-field and off-field penalties, from a loss of yardage or downs during a game to fines or other discipline imposed by the League's Commissioner after a game.  According to the Complaint, a Patriots employee was "accused of aiming his camera at the Jets' defensive coaches, who were sending signals out to the players." Cmplt. ¶ 14.  The League found the Patriots violated a rule that prohibits the use of video cameras on the field during games.  *Id.* ¶ 18.  The rule is one of countless examples of necessary line-drawing by the League, in this case dealing with observing opposing coaches' signals.  The League does not prohibit observing an opposing coaches' signals during a game, even if those observations are accompanied by dictating observations of signals, use of binoculars, lip-reading,

---

[1]  The Patriots do not address here the fatal deficiencies of plaintiff's class allegations, as they are not at issue in this motion and will be moot if the court dismisses the Complaint for failing to state a claim for relief.  It should be noted, however, that the Third Circuit has made clear that an action may not proceed where, as here, the named class representative is also the class counsel.  *Kramer v. Scientific Control Corp.*, 534 F.2d 1085, 1090 (3d Cir. 1976).

etc.  The League could have decided to allow use of videotaping as well, but chose not to.  The League could also have prohibited the use of video equipment to observe signals only if the video was then used for the game in question (which is how Coach Belichick had interpreted the rule) or could have prohibited videotaping signals from the sideline regardless of when the video was used (which is how the League interpreted and enforced this rule).  The signals are given in plain view of thousands of people, and the League decided which methods of observation and use are to be deemed appropriate and which are a rule violation.  Interpreting and enforcing this rule, the League fined the Patriots (both the Team and Coach Belichick individually) and penalized the Team by ruling that it would forfeit one or more 2008 college draft picks.  *Id.* ¶ 18.  The League, in short, adopted a rule, interpreted it, and enforced it.  The Patriots, as a member of the League, accepted the League's interpretation and the severe penalties imposed by the League.  The matter ends there.  These facts do not create the soil in which a lawsuit by a fan can grow.

The plaintiff claims that, because the Patriots were found to have broken an NFL rule and, based "on information and belief," because the Patriots allegedly committed the same infraction during every other game the Patriots played against the Jets at Giants Stadium between 2000 and 2007 (Cmplt. ¶ 21), the Patriots should be required to refund to every Jets season ticket holder the entire amount paid for the tickets purchased for each such game, an amount which allegedly exceeds $61 million, and which the plaintiff claims should be trebled to over $180 million.  Cmplt. ¶ 21, Prayer for Relief (C).

## II.   SUMMARY OF ARGUMENT

Regardless of how framed, there is no cognizable claim by a fan that arises from a team's violation of a League rule.  Like every sport, football has many rules.  There are rules governing every participant and every action during every second of every game.  There are rules governing

2

pre- and post-game conduct.  There are rules governing on-field and off-field conduct.  To name

but a few of the hundreds of such rules, there are rules against starting a play "offsides," against

grabbing the face mask of another player, against blocking someone in the back, against

"roughing" the passer, against unsportsmanlike conduct, against having too many players on the

field, against "tampering" with players or coaches on another team, against exceeding a "cap" on

player salaries, against players' use of certain controlled substances, etc. etc.[2]  Fouls and

penalties are a part of the game.  Teams may sometimes decide to break rules (e.g., delay of

game, pass interference, etc.) intentionally to gain a competitive advantage, understanding the

risk that the officials may observe the infraction and penalize them for it.  In other instances, a

violation may have been inadvertent or committed due to a rule misinterpretation.  One thing is

for certain.  Fans cannot sue participants for breaking the game's rules.

    The rules governing the playing of a professional sport are not the laws of society any

more than are the rules of the games of checkers or Scrabble or Monopoly.  They do not impose

contractual or common law duties on participants in favor of fans who watch.  Like many

voluntary associations, professional sports organizations create rules that the members agree

upon, and enforce those rules through the imposition of agreed-to penalties.  They do so without

exposing members to lawsuits from third parties whenever such an infraction occurs or a penalty

is issued.

    Each week during football season, there are countless NFL, college, and high school

football games that fans pay to watch.  Officials call penalties at every such game.  Using the

---

[2] The types of rules -- violations of which could become the basis of would-be plaintiffs'
claims -- range from the relatively innocuous, such as  rules regulating the length of players'
pants and shirt sleeves and rules requiring that chin straps be buckled, to rules that protect
players from season or career-ending injuries, such as the rule against roughing the passer.

words of the Complaint, someone is always "cheating" and, when caught, being penalized for it. If every patron at every game could sue every time a team was offsides or took a cheap shot at the quarterback or had a player that was found to have taken "banned substances" or used a player who was acquired through "tampering", the dockets of every court in the country would be over-filled with class action law suits seeking refunds for tickets to thousands of sporting events. Teams would have to stop playing in front of paying fans, since the exposure to claims for "violating the playing rules" would be monumental.

Even if the focus were just on the specific infraction on which the Complaint exclusively focuses - that is, the Patriots' "recording, capturing, and stealing signals and visual coaching instructions" - any recognition of a claim in favor of the plaintiff against the Patriots could, according to the common understanding in the League about the frequency of such conduct, open the door to legal claims regarding countless games.   On the subject of NFL teams "stealing" signals:

> "*Its not something that hasn't happened before*"  -- Atlanta Falcons coach Bobby
>
> Petrino (source:  Knoxville News Sentinel September 16, 2007)
>
> "*Your always trying to get the other team's signals*"  -- Seattle Seahawks coach
>
> Mike Holmgren (source:  Knoxville News Sentinel September 16, 2007)
>
> "*I know we're all trying to get signals, we're all looking for an edge.*" -- Tampa
>
> Bay Buccaneers coach Jon Gruden (source:  Knoxville News Sentinel
>
> September 16, 2007)
>
> "Our guys keep a pair of binoculars on their signal-callers every game.  With any
>
> luck, we have their defensive signals figured out by halftime, sometimes

4

by the end of the first quarter." -- Denver Broncos Coach Mike Shanahan
(source:  Sports Illustrated January 9, 2002)

"*People have always cheated.*"  -- former Green Bay Packers general manager
Ron Wolf (source: New York Times September 20, 2007)

"*Everyone does it*" -- Green Bay Packers official (source: Boston Herald
September 13, 2007)

"Well, I mean we all did it, and that was part of it, getting signals.  Every coach in
the world is always pushing to get a competitive advantage, that's always
been happening." --  Hall of Fame former coach of Oakland Raiders
(source: Boston Globe September 14, 2007)

"Really, this is nothing new.  You see offensive play callers covering their
mouths, that's been going on for a long time [to evade the efforts of the
other team to steal signals], and that's the reason its done." -- Pittsburgh
Steelers coach Mike Tomlin (source: Boston Globe September 11, 2007)

"From a coaches perspective, trying to steal signals is part of the game . . . That
doesn't make him [Belichick] right, but a lot of teams are doing this." --
former Pittsburgh Steelers coach Bill Cower (source: Boston Globe
September 11, 2007)

"There isn't a team in the league that doesn't try to steal signals.  I haven't heard
about teams recording footage like the Patriots were[, b]ut you can bet
everybody is trying to steal in some way.  In fact, you can go to any NFL
game and you'll find some coach whose sole job it is to look for defensive

5

signals." -- longtime NFL assistant coach (source: ESPN.com September

13, 2007)

In the submission supporting its separately filed motion to dismiss, the NFL details the

threshold basis for the dismissal of all of plaintiff's causes of action, which is, in substance, that

spectators have no express or implied right to see a sporting event free of infractions or free from

any one particular type of infraction.  The Patriots incorporate by reference the arguments in the

NFL's brief.  In this memorandum, the Patriots address the flaws in each of the plaintiff's

individual causes of action.

## III.    LEGAL STANDARD FOR MOTION TO DISMISS

On a Rule 12(b)(6) motion, a court must "accept all factual allegations as true, construe

the complaint in the light most favorable to the plaintiff, and determine whether, under any

reasonable reading of the complaint, the plaintiff may be entitled to relief."  *Phillips v. County of

Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (citations omitted).  A complaint must be dismissed

if the plaintiff has failed to "mak[e] a sufficient showing of enough factual matter (taken as true)

to suggest the required elements of [its] claims."  *Id.* at 235.  Rule 12(b)(6) also authorizes a

court to dismiss a claim on a dispositive issue of law.  *Neitzke v. Williams*, 490 U.S. 319, 326

(1989).  A court is not required to accept legal conclusions either alleged or inferred from the

pleaded facts.  *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).

## IV.    ARGUMENT:  EACH INDIVIDUAL CAUSE OF ACTION AGAINST THE PATRIOTS FAILS TO STATE A CLAIM FOR RELIEF AND MUST BE DISMISSED

### 1.    Count I - Tortious Interference With Contractual Relations

In New Jersey, the essential elements of a tortious interference with contractual relations

claim are as follows: "(1) existence of a contract; (2) defendant's knowledge of that contract; (3)

defendant's intentional and improper procuring of the breach; and (4) damages."  *Elbex Video,*

6

*Ltd. v. Tyco Intern., Ltd.*, 2008 WL 1375883, *5 n.6 (D.N.J. Apr. 9, 2008) (*quoting NXIVM Corp. v. Sutton*, 2007 U.S. Dist. LEXIS 46471, *41 (D.N.J. Jun. 27, 2007)).

> (a)     The arrangement with which plaintiff claims the Patriots interfered is not a contract and does not provide for a reasonable expectation of economic advantage.

Plaintiff's cause of action for tortious interference with contractual relations fails to state a claim for several reasons. First, the claim fails as to its most basic element: the very existence of the "contract" between the plaintiff and the Jets with which the Patriots interfered. Under New Jersey law, in order to state a claim for tortious interference, a plaintiff must allege either a contract or, at a minimum, facts "giving rise to some 'reasonable expectation of economic advantage.'" *Printing Mart-Morristown v. Sharp Electronics Corp.*, 116 N.J. 739, 750-51, 536 A.2d 31, 37 (1989) (citations omitted). Here, as a matter of law, there is no contract and no relationship giving plaintiff any economically advantageous rights. The plaintiff purchased tickets to attend the games at issue. Tickets are not contracts. They are merely revocable licenses that can be revoked for any reason or no reason. *E.g.*, *Shubert v. Nixon Amusement Co.*, 83 A. 369 (N.J. 1912) ("At common law, the sale of a theater ticket creates only a personal license to enter the theater and enjoy the performance for which such ticket is sold, using the seat assigned, if any. Such license is revocable at the will of the proprietor of the theater, who may lawfully require the licensee to leave the theater without assigning any reason therefore").[3] Nor

---

[3] *Accord, Johnston v. Tampa Sports Auth.*, 530 F.3d 1320, 1329 (11th Cir. 2008) ("As we noted, Johnston did not have any right or entitlement to enter the Stadium. His purchase of a [Buccaneers season] *ticket granted him at most a revocable license* to a seat. As is typical of sporting events, the NFL and the Buccaneers explicitly retained the right to exclude him from the Stadium for any reason."); *Kennedy Theater Ticket Serv. v. Ticketron, Inc.*, 342 F. Supp. 922, 925 (E.D. Pa. 1972) ("Admission *tickets* have been uniformly defined as *revocable licenses* issued as convenient evidence of the right of the holder to be admitted to a particular place of entertainment at a specific time and date for the privilege of being entertained."); *In re Opinion of the Justices*, 143 N.E. 808, 811 (Mass. 1924) ("A *ticket* of admission to a place of amusement
. . . *Continued*

does observing a sporting event meet the "economic advantage" requirement.   As plaintiff asserts, he acquired the tickets "to watch the New York Jets."  *Cmplt.* ¶ 3.  A claim for tortious interference with contractual relations cannot stand where, as here, the claimant has merely a revocable license to see a sporting event.

> (b)     *The tickets that plaintiff purchased contain no express or implied right to see a game free of infractions of the rules.*

Even if the tickets were contracts (which they are not), and even if watching the games met the economic advantage requirement (which it does not), the tickets themselves belie plaintiff's claim that the Patriots interfered with an "understanding, both express and implied, that the game will be played honestly and according to established rules."   The tickets, an example of which is attached as Exhibit A to the Declaration of Stephen M. Orlofsky, filed herewith, contain no such "express" term.[4]  The tickets do not refer to the rules of play at all.  By their terms, they "only grant entry into the stadium and a spectator seat for the specified NFL game."  *See Exh. A* to Declaration of Stephen M. Orlofsky.  Nothing on the tickets suggests in any way that the teams will play infraction-free football.  They do not guarantee that star players will play that day, that either team will play at its peak of performance, that penalties will be

---

is a *revocable license*."); *Yarde Metals, Inc. v. New England Patriots Ltd. P'ship*, 834 N.E.2d 1233, 1236 (Mass. App. Ct. 2005) ("The purchase of *a ticket to a sports* or entertainment *event typically creates nothing more than a revocable license*."); *Bickett v. Buffalo Bills, Inc.*, 472 N.Y.S.2d 245, 247 (N.Y. Sup. Ct. 1983) ("It is clear the [Buffalo] Bills reserved the right to refuse to honor the football [season] tickets in question. Thus, *when the Bills issued tickets to the plaintiff and other ticketholders, they issued licenses which could be revoked at any time*."); 27A Am. Jur. 2d, *Entertainment and Sports Law*, § 42 (2008) ("It is generally held that a *ticket* of admission to a theater or similar place of amusement is, in the absence of statute, *a mere license* to witness the performance, which the owner or proprietor may revoke at will") (emphases added).

[4]  The Complaint references the tickets. *See e.g.,* Cmplt. ¶ 3.  In deciding a motion to dismiss, the Court may consider the documents referenced in and attached to a complaint without converting the motion to one for summary judgment. *E.g.,* *U.S. Express Lines, LTD. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).

properly called, that either team will refrain from intentional rule violations, that signals will not be "stolen", or that a team's former players or coaches now working for the opposing team have not revealed team strategies or tendencies to their new employer.

Nor can any such terms be implied from the tickets. Courts imply terms into a contract only where the failure to do so will render the agreement unenforceable. *See, e.g., New Jersey Bank v. Palladino,* 77 N.J. 33, 46, 389 A.2d 454, 461 (1978) ("(t)erms will be implied in a contract where the parties must have intended them because they are necessary to give business efficacy to the contract as written."); *McGarry v. Saint Anthony of Padua Roman Catholic Church,* 307 N.J. Super. 525, 533, 704 A.2d 1353, 1357 (App. Div. 1998) (same). Otherwise, "the court is bound to enforce its terms as they are written . . . ." *Camden Iron and Metal, Inc. v. Bomar Res., Inc.,* 719 F. Supp. 297, 305 (D. N.J. 1989) (*citing Wells v. Wilbur B. Driver Co.,* 121 N.J. Super. 185, 296 A.2d 352 (Law Div. 1972)). *See also Graziano v. Grant,* 326 N.J. Super. 328, 342, 741 A.2d 156, 163 (App. Div. 1999) ("it is not the function of the court to make a better contract for the parties, or to supply terms that have not been agreed upon.").[5] Here, of course, there is no basis to assert that, in order to render the tickets enforceable, they must be read to include a term guarantying ticket holders a given quality of play or an infraction-free game (or a game without the use of video-cameras to observe signals). No such term can, therefore, be "implied" in the ticket terms. In short, plaintiff has not and cannot identify any contractual provision with which the Patriots interfered.

---

[5] Insofar as the Complaint would have the court speculate that the plaintiff might be basing his claim of an agreement between him and the Jets on something other than the tickets themselves, the court cannot so speculate. *Cooper Hosiery Mills, Inc. v. Honeywell Int'l, Inc.,* 2007 WL 3243854, *2 (D.N.J. Nov. 1, 2007) (noting the Supreme Court instruction that "[f]actual allegations must be enough to raise a right to relief above the speculative level.") (quoting *Bell Atl. Corp. v. Twombly,* 127 S.Ct. 1955, 1965 (2007)).

099999.00200/50362190v.1

(c)   *The Complaint does not satisfy the "malicious intent" element of a claim for tortious interference.*

The plaintiff also does not allege that the Patriots used cameras on the sideline for the purpose of, and with the intent to, interfere with his so-called "contract" (really, a mere license) with the Jets. "It is true that a plaintiff seeking to recover for tortious interference must show that the defendant specifically intended to interfere with *that* plaintiff." *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1170 (3d Cir. 1993).[6] In other words, the plaintiff has not alleged, nor could he in good faith or plausibly allege, that the Patriots used cameras on the side line for the purpose of interfering with his "contract" to see Jets games.

(d)   *The absence of any allegation that the Jets failed to perform under any agreement with the plaintiff is also fatal to his claim for tortious interference.*

Plaintiff's interference claim also fails because he does not allege, nor could he allege, that the Jets "failed to perform" their "contract" with the plaintiff as a result of the Patriots' use of a video camera on the sidelines.

> [o]ne interferes with a contract only where he causes a party not to perform under it. As noted, a plaintiff must show that the defendant's intentional and malicious interference resulted in a breach or loss of the contract. The Restatement definition of the tort makes this clear: 'One who intentionally and improperly interferes with the performance of a contract ... between another and a third person *by inducing or otherwise causing the third person not to perform the*

---

[6] *See also Woods Corp. Assocs. v. Signet Star Holdings, Inc.*, 910 F. Supp. 1019, 1032 (D. N.J. 1995) ("Interpreting New Jersey law, the federal courts in this circuit require a plaintiff seeking to recover for tortious interference to show that the defendant specifically intended to interfere with that particular plaintiff."); *Fineman v. Armstrong World Indus., Inc.*, 774 F. Supp. 225, 250-51 (D. N.J. 1991) (finding under New Jersey law that individual plaintiff's claim of tortious interference must be dismissed because he did not show a specific intent to interfere with his contracts), *aff'd in part, rev'd in part on other grounds*, 980 F.2d 171 (3d Cir. 1992), *cert. denied*, 507 U.S. 921 (1993); *Restatement (Second) of Torts* § 766, comment p ("[t]o subject the actor to liability under this rule, his conduct must be intended to affect the contract of a specific person").

10

*contract,* is subject to liability . . . .' *Restatement (Second) of Torts,* § 766 (1979) (emphasis added). . . . The cause of action requires a failure to perform.

*DiGiorgio Corp. v. Mendez and Co.,* 230 F. Supp. 2d 552, 566 (D. N.J. 2002). The plaintiff purchased tickets that, by their terms, "only grant[ed] entry into the stadium and a spectator seat for the specified NFL game." *See Exhibit A* to the Declaration of Stephen M. Orlofsky, filed herewith (and note 2, *supra*). There is no allegation that the Jets did not so provide plaintiff with entry into Giants Stadium. Indeed, the allegations are just the opposite, asserting that plaintiff did attend the games in question.

### 2.    Count II - Common Law Fraud

#### (a)    *The Patriots bore no duty of disclosure to the plaintiff.*

Plaintiff's fraud claim is not based upon any statement or representation made to the plaintiff. Instead, plaintiff claims that the Patriots "concealed and omitted to [ ] disclos[e]" their intent to record by video the Jets' sideline coaching signals. Cmplt. ¶ 71. The absence of any duty on the part of the Patriots to disclose anything to the plaintiff is fatal to his claim. "[W]here a claim for fraud is based on silence or concealment, New Jersey courts will not imply a duty to disclose, unless such disclosure is necessary to make a previous statement true or the parties share a 'special relationship.'" *Lightning Lube,* 4 F.3d at  (citations omitted).[7]

---

[7] *See also Berman v. Gurwicz,* 189 N.J. Super. 89, 93, 458 A.2d 1311, 1313 (Ch. Div. 1981) (duty of full disclosure may arise from one party's having made partial disclosure to other or from nature of transaction and relationship between them), *aff'd,* 189 N.J. Super. 49, 458 A.2d 1289 (App. Div. 1983), *certif. denied,* 94 N.J. 549, 468 A.2d 197 (1983); *see also Jewish Ctr. of Sussex County v. Whale,* 86 N.J. 619, 626, 432 A.2d 521, 525 (1981) (where applicant for rabbinical position omitted mention of his prior criminal convictions on employment application, congregation stated proper claim of fraudulent concealment "[b]ecause of the unique moral and spiritual relationship between clergy and congregation'"); *Viviano v. CBS, Inc.,* 251 N.J. Super. 113, 123, 597 A.2d 543, 548 (App. Div. 1991) (recovery for fraudulent concealment requires proof that defendant legally was obligated to disclose); *Tele-Save Merchandising Co. v. Consumers Distrib. Co.,* 814 F.2d 1120, 1125 n. 2 (6th Cir. 1987) (dissenting opinion) ("in the absence of a fiduciary relationship, nondisclosure does not constitute fraud under New Jersey
. . . *Continued*

11

"There are three general types of transactions where the duty to disclose arises: (1) where a fiduciary relationship exists between the parties, (2) where the transaction itself calls for perfect good faith and full disclosure, or (3) where one party expressly reposes a trust and confidence in the other." *Maertin v. Armstrong World Indus., Inc.*, 241 F. Supp. 2d 434, 461 (D. N.J. 2002) (quotations and citations omitted).  None of these situations applies here.  Since the Patriots and the plaintiff engaged in no transaction and have no relationship whatsoever (let alone a "special relationship"), the Patriots bore no duty to disclose any information to plaintiff.

> **(b)**     *The absence of any allegation that the Patriots concealed their plans to videotape with the specific intent to induce plaintiff to purchase tickets requires dismissal of the fraud claim.*

Even if, assuming *arguendo*, the Patriots bore a duty to the plaintiff to affirmatively disclose before their game with the Jets that they intended to use a video camera on the sideline to record signals for possible future review, the claim for fraud still fails because plaintiff has not alleged, and cannot in good faith allege, that said omission was intentionally made for the purpose of inducing the plaintiff to purchase tickets.  In order to sustain a claim for fraud, a plaintiff must allege that the defendant made a misrepresentation or omission with the intent that it be acted upon by the plaintiff.  *See Gennari v. Weichert Realtors,* 148 N.J. 582, 610, 691 A.2d 350, 367 (1997) ("The five elements of common law fraud are (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) *an intention that the other person rely on it*; (4) reasonable reliance thereon by the other person; and (5) resulting damages") (citations omitted) (emphasis added); *see also Eli Lilly and Co. v. Roussel Corp.*, 23 F. Supp. 2d 460, 492 (D. N.J. 1998) ("A plaintiff can state a claim for fraud

_____

law"); *Restatement (Second) of Torts* § 551 (requiring disclosure only where defendant knows information the nondisclosure of which will make earlier partial or ambiguous statement of facts to become misleading or where defendant is in a fiduciary or special relationship with plaintiff).

based on defendant's alleged misrepresentation to a third party only if the defendant 'intended it to be communicated to and relied upon by the plaintiff'") (internal citation omitted); *Port Liberte Homeowners Ass'n, Inc. v. Sordoni Const. Co.*, 393 N.J. Super. 492, 508, 924 A.2d 592, 601 (App. Div. 2007) ("a plaintiff must prove that he or she was an intended recipient of the defendant's misrepresentations").

The Patriots' silence concerning such matters is not alleged to have been motivated by a desire to induce the plaintiff to buy his season tickets. Nor could any such allegation be reasonably or plausibly made.

### 3.   Count III - Deceptive Business Practices, N.J.S.A. 2C:21-7

Count III of the Complaint purports to be a cause of action for violation of N.J.S.A. 2C:21-7. This is a criminal statute. It provides for no private cause of action. *Stern v. Halligan*, 158 F.3d 729, 731 n.1 (3d Cir. 1998) (no private cause of action under New Jersey criminal statutes). Even if it did so, the conduct of the Patriots, as alleged in the complaint, does not amount to a violation of the statute. The statute enumerates seven offenses. The complaint does not specify which offense the Patriots are alleged to have committed; and the factual allegations of the Complaint do not satisfy the elements of any of the offenses.[8]

### 4.   Count IV - New Jersey Racketeering, N.J.S.A. 2C:41-2

Plaintiff alleges violation of the New Jersey Racketeering statute, N.J.S.A., 2C:41-2, which mirrors its federal RICO counterpart, 18 U.S.C. § 1961 *et. seq.* This state claim fails for all of the reasons set forth in the section below addressing the federal RICO claim. *State v. Ball*,

---

[8] The offenses in N.J.S.A. 2C:21-7 that most closely match plaintiffs' "fraud" mantra are subsections "e," "h," and "i" of the statute, which bar the "mak[ing of] a false or misleading" statements for various specified purposes. There is, however, no allegation in the complaint of the Patriots having made any false or misleading statement for any purpose.

099999.00200/50362190v.1

141 N.J. 142, 156, 661 A.2d 251, 258 (1995) ("[T]he New Jersey RICO statute paralleled federal RICO. . . . [B]ecause the federal statute served as an initial model for our own, we heed federal legislative history and case law in construing our statute."); *see also State v. Kuklinski*, 1989 WL 260275, *1 (N.J. Super. Ct. Law Div. Feb. 15, 1989) ("Very few cases have come down from the New Jersey courts interpreting our racketeering statute. Since our statute is based upon the Federal Racketeering Influenced and Corrupt Organizations Act (RICO), guidance is found in the federal courts.").

### 5.   Count V - The Racketeering Influenced and Corrupt Organization Act, 18 U.S.C. § 1962(a), (b), and (c)

In order to state a federal RICO claim, a plaintiff must allege, *inter alia*, injury to his business or property by any one of the four types of conduct prohibited by the statute, each of which entails the defendant's involvement in a "pattern of racketeering activity." *See* 18 U.S.C. § 1962. "Racketeering activity" must consist of two or more specified predicate acts, which are criminal offenses "indictable" or "punishable" under various criminal laws or "chargeable" under various state criminal laws. *Id.* Plaintiff's RICO claim fails because the allegations of the Complaint do not satisfy the elements of any of the four types of prohibited activities enumerated in 18 U.S.C. § 1962 and, further, the Complaint alleges no predicate act specified in the statute, no injury recognized by the statute, and no proximate cause between any predicate act and any injury. The failure of a RICO claim to meet any of these requirements requires its dismissal.

(a)   *Rote recitation of the legal elements of a RICO claim does not state such a claim.*

As a preliminary matter, plaintiff's RICO Count contains little more than a rote recitation of the statutory elements of a RICO claim (*see* Cmplt. ¶¶ 94-99) followed by a bare, conclusory allegation that the Patriots committed predicate acts "through the use of the mails and interstate wires by concealing their intent to violate the agreed [NFL] rules . . ." Cmplt. ¶ 100. This is

14

insufficient.  "While a complaint ... does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Citell v. Aviles*, 2007 WL 3243932, *2 (D.N.J. Nov. 2, 2007) (citations omitted).  *See Papasan v. Allain*, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation").

> (b)  *The Complaint does not adequately allege the Patriots to have engaged in any of the four "prohibited activities" proscribed by 18 U.S.C. 1962(a) through (d).*
>
>> (i)  With no allegation of any injury specifically from the use or investment of income in an enterprise, the Complaint fails to state a claim for violation of § 1962(a).

Section 1962(a) prohibits "any person who has received any income derived ... from a pattern of racketeering activity" from using that money to acquire, establish or operate any enterprise that affects interstate commerce.  18 U.S.C. § 1962(a).  Under this section, "a plaintiff must allege injury specifically from the use or investment of income in the named enterprise."  *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1411 (3d Cir. 1991) (where "injury stems from the allegedly fraudulent activities of [defendants], but is not specifically linked to the use or investment of income in any named enterprise," § 1962(a) is not a basis for liability); *see also Rose v. Bartle*, 871 F.2d 331, 357 (3d Cir. 1989) (affirming lower court's requirement that a section 1962(a) injury must "have been caused by the use or investment of income in the enterprise, rather than by the predicate racketeering acts or pattern.").  Beyond regurgitating the text of section 1962(a), the Complaint contains no allegations of fact that meet any of the elements of a claim for relief under the section.  The Complaint contains no factual allegations to establish that the Patriots received income derived from videotaping opposing coaches' signals. Nor does the Complaint allege that any injury to the plaintiff was caused by use or investment of

15

income derived from the alleged pattern of racketeering -- that is, derived from the Patriots' videotaping signals in violation of a League rule.  Nor does the Complaint allege that the Patriots used or invested income derived from such conduct to acquire an interest in, establish, or operate a RICO "enterprise."  Accordingly, plaintiff has not stated a viable claim under § 1962(a).

> (ii)    The Complaint does not state a claim for relief under § 1962(b) because it does not allege that the Patriots acquired control over an enterprise through a pattern of racketeering activity.

Under Section 1962(b), it is unlawful "for any person through a pattern of racketeering activity or through a collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."  18 U.S.C. § 1962(b).  To recover, "a plaintiff must allege injury from the defendant's acquisition or control of an interest in a RICO enterprise, in addition to injury from the predicate acts."  *Casper v. Paine Webber Group, Inc.,* 787 F. Supp. 1480, 1494 (D. N.J. 1992).  Additionally, "the plaintiff must establish that the interest or control of the RICO enterprise by the person is as a result of racketeering."  *Lightning Lube,* 4 F.3d at 1190.  It is insufficient "for the plaintiff merely to show that a person engaged in racketeering has an otherwise legitimate interest in an enterprise.  Rather, it must be established firmly that there is a nexus between the interest and the alleged racketeering activities."  *Id.; see also Kehr Packages,* 926 F.2d at (a § 1962(b) claim requires allegations of "a specific nexus between control of a named enterprise and the alleged racketeering activity."); *Shearin v. E.F. Hutton Group, Inc.,* 885 F.2d 1162, 1168 n.2 (3d Cir. 1989) (plaintiff's pleading of the section 1962(b) violation was "legally insufficient since she does not allege any nexus between control of the enterprise and the alleged racketeering activity.").  Here, the Complaint contains no allegations either (a) to establish a nexus between the alleged "racketeering activity" -- that is, the alleged videotaping of

16

coaches' signals -- and any control of the Patriots over a RICO "enterprise" or (b) to establish

that any injury to any plaintiff was caused by the Patriots' control of such an enterprise.

> (iii)   Since the Complaint identifies no valid enterprise, nor a person
> employed by or associated with a valid enterprise, it does not state
> a claim for relief under § 1962(c).

Under Section 1962(c), "[i]t shall be unlawful for any person employed by or associated

with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such

enterprise's affairs through a pattern of racketeering activity. . . ."  18 U.S.C. § 1962(c).  In order

to state a claim for racketeering under RICO section 1962(c), plaintiff is required to identify a

racketeering enterprise that is separate and distinct from the racketeering defendants.  In *B.F.*

*Hirsch v. Enright Refining Co.,* 751 F.2d 628, 633 (3d Cir. 1984), the court held that the

defendant "person" charged with violating that statute cannot be the same entity as the alleged

"enterprise."  *See also Lorenz v. CSX Corp.,* 1 F.3d 1406, 1411 (3d Cir. 1993) (a defendant

corporation "could not simultaneously be both the defendant and the enterprise, because it would

be illogical to say that a corporation was employed by or associated with itself.").  In its

Complaint, the plaintiff includes the New England Patriots and the National Football League as

enterprises.  Cmplt. ¶ 87.  The plaintiff has failed to state a claim under § 1962(c) against either

such defendant because, the "persons" charged with liability, the New England Patriots and the

NFL, are "the same entit[es] as the entit[es] fulfilling the enterprise requirement." *B.F. Hirsch,*

751 F.2d at 633.

Assuming for the sake of argument that the remaining "enterprise" referenced in the

Complaint, the New York Jets (*see* Complaint at ¶ 99), is a valid enterprise, the plaintiff

nevertheless fails to allege that any of the defendants were "employed with or associated with"

the Jets "to conduct or participate, directly or indirectly, in the conduct of such enterprise's

affairs." 18 U.S.C. § 1962(c).  In interpreting 1962(c), the Supreme Court held that "[in] order to

17

'participate, directly or indirectly, in the conduct of such enterprise's affairs,' one must have some part in directing those affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993) Adopting the "operation or management" test previously followed by the Court of Appeals for the Eighth Circuit, the Supreme Court held that "one is not liable under [section 1962(c)] unless one has participated in the operation or management of the enterprise itself." *Id.* at 183; *see also Univ. of Maryland at Baltimore v. Peat, Marwick, Main & Co.*, 996 F.2d 1534, 1539 (3d Cir. 1993) (applying the operation and management test and holding that "[s]imply because one provides goods or services that ultimately benefit the enterprise does not mean that one becomes liable under RICO as a result. There must be a nexus between the person and the conduct in the affairs of an enterprise. . . . In other words, the person must knowingly engage in '*directing* the enterprise's affairs' through a pattern of racketeering activity."). The plaintiff has failed to allege -- and cannot allege -- that the Patriots directed, or even had the authority to direct, the affairs of the New York Jets, and therefore cannot sustain a claim under § 1962(c).

> (iv)   There can be no liability under section 1962(d) for conspiracy to commit a "prohibited activity" because no action lies under Sections 1962 (a), (b), or (c).

Under § 1962(d), "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section." "Any claim under section 1962(d) based on a conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient." *Lightening Lube*, 4 F.3d at 1191 (citations omitted). As set forth above, plaintiff has not established a valid RICO claim under §1962(a), (b) or (c). Nor have facts of a conspiracy been alleged. Accordingly, the § 1962(d) claim fails as well.

(c)     *The complaint alleges no viable predicate act.*

The Complaint fails to allege that the Patriots committed any of the predicate acts specified in 18 U.S.C. § 1961(1) as being required to give rise to a RICO claim.  The closest the Complaint comes to making the requisite allegations is in Paragraph 100, which alleges that the Patriots "committed predicate acts through the use of the mails or interstate wires in furthering their fraudulent inducement of consumers of New [York] Jets tickets to purchase said tickets by concealing their intent to violate the agreed rules . . ."  While allegations sufficient to state a claim for violation of the mail fraud and wire fraud statutes (18 U.S.C. § 1341 and § 1343, respectively) can, if adequately pled, satisfy the "predicate act" element of RICO, merely alleging in conclusory fashion, as the Complaint does, that "mails and interstate wires were used in furthering a fraudulent inducement" of plaintiff does not by itself make out a RICO claim.  Jed S. Rakoff and Howard W. Goldstein, *RICO: Civil and Criminal Law and Strategy* § 1.04(1)(d)(i) ("To try to minimize the temptation for would-be RICO plaintiffs to recast ordinary commercial disputes as racketeering activity, the courts strictly require a RICO complaint to allege every essential element of each predicate act") (citations omitted).

Indeed, where mail and wire fraud provide the basis for a RICO claim, each of the essential elements must not only be alleged but, pursuant to Fed. R. Civ. P. 9(b), must also be particularized.[2]  Particularity is provided "by pleading the date, place or time of the fraud, or

---

[2] *See e.g., Lum v. Bank of America*, 361 F.3d 217, 223 (3d Cir. 2004) ("Where, as here, plaintiffs rely on mail and wire fraud as a basis for a RICO violation, the allegations of fraud must comply with Federal Rule of Civil Procedure 9(b), which requires that allegations of fraud be pled with specificity."); *see also Poling v. K. Hovnanian Enterprises*, 99 F. Supp. 2d 502, 508 (D. N.J. 2000) ("Where plaintiffs allege mail and wire fraud as the basis of a RICO violation, the allegations of fraud must comport with the Fed.R.Civ.P. 9(b) heightened pleading standard."). "In order to satisfy Rule 9(b), plaintiffs must plead with particularity the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which
*. . . Continued*

through alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *Lum*, 361 F.3d at 224 (quotations and citations omitted). Additionally, "allegations that generally allege fraud as against multiple defendants, without informing each defendant as to the specific fraudulent acts he or she is alleged to have committed do not satisfy Rule 9(b)." *Poling*, 99 F. Supp. 2d at 508. As detailed above, the allegations of fraud in the Complaint are not pled with particularity and are otherwise insufficient to make out a sustainable claim for fraud. *See supra* at pp 10-11.[10] With no viable claim for mail or wire fraud, there is no predicate act to satisfy the "racketeering" element of RICO.

> (d)     *The Complaint fails to allege a RICO injury.*

The plaintiff's Complaint also fails to allege, as it must to sustain a RICO claim, that plaintiff has been "injured in [his] business or property by reason of a [RICO] violation." *See* 18 U.S.C. § 1964(c). "[A] showing of injury requires proof of a concrete financial loss and not mere injury to a valuable intangible property interest." *Magnum v. Archdiocese of Philadelphia*, 2007 WL 3257209, *2 (3d Cir. 2007) (citations omitted); *see also Twp. of Marlboro v. Scannapieco*, 545 F. Supp. 2d 452, 458 (D. N.J. 2008) (requirement of a concrete financial loss "helps to assure that RICO is not expanded to provide a federal cause of action and treble damages to every tort plaintiff"). Plaintiff claims that, when he purchased tickets, he did not

---

they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Lum*, 361 F.3d at 223-224 (quotations and citations omitted).

[10] Plaintiff's claim of violations of the mail and wire fraud statutes are not pled with particularity for the additional reason that the Complaint fails to allege, as the mail and wire fraud statutes require, that a mail (or wire) was used to "execute" a fraud and that the mailing/wiring, at a minimum, be "incident to an essential part of the scheme." *Pereira v. U.S.*, 347 U.S. 1, 8 (1954). "Plaintiffs asserting mail fraud must also identify the purpose of the mailing within the defendant's fraudulent scheme." *McLaughlin v. Anderson*, 962 F.2d 187, 191 (2d Cir. 1992). The Complaint here is silent as to how any supposed mailing or wire relates to the Patriots' use of a camera on the sidelines of a football game in violation of an NFL rule.

20

expect the Patriots to use a video camera to record Jets' coaching signals.  Since he did not learn of any supposedly disapproved videotaping until *after* the game at issue, it could not have diminished his enjoyment of the game as he was watching it.  The plaintiff thus seems to be alleging that, when he learned *afterward* that the Patriots had broken an NFL rule, he became angry at the Patriots and feeling as though the game, in retrospect, was not worth what he paid to see it.  Regardless of when his disappointment set in, a "diminution in enjoyment is not a tangible injury" to property sufficient to confer standing to sue under RICO.  *Oscar v. Univ. Students Co-Operative Ass'n,* 965 F.2d 783, 787 (9th Cir. 1992) (a tenant who claimed diminution in enjoyment of her apartment due to alleged drug dealing and other wrongful conduct by students in a neighboring housing co-operative did not suffer a RICO injury).  In short, the mere fact that, according to plaintiff, the Patriots deprived him of "an honest match" (see Cmplt. ¶ 2) is not the type of economic harm required by the statute.  *Ove v. Gwinn*, 264 F.3d 817, 825 (9th Cir. 2001) (deprivation of "honest services" does not constitute a concrete financial loss).

> (e)  *The Complaint fails to satisfy the proximate cause element of a RICO claim.*

The absence of any apparent nexus between the conduct at issue -- the use of a sideline video camera to record coaches' signals for possible future review and use -- and the alleged injury -- the loss of the amount paid to attend the games at issue -- is also fatal to plaintiff's RICO claim.  Subsection 1964(c) requires a showing that the RICO injury was "by reason of a violation of" one of the "prohibited activities" set forth in Subsection 1962.  The Supreme Court has construed this as requiring the plaintiff to show that commission of the RICO predicate act is

21

the direct proximate cause of a plaintiff's injuries. *Holmes v. Sec. Investor Protection Corp.,* 503 U.S. 258, 268-270 (1992).[11]

The "general rule" for proximate cause in RICO cases based on fraud "is that you are liable only to an *intended* victim . . . ." *Eli Lilly and Co.,* 23 F. Supp. 2d at 483-84 (emphasis added) (noting the Supreme Court's concern in *Holmes* that "'suits by those injured only indirectly would open the door to 'massive and complex damages litigation which would not only burden the courts, but would also undermine the effectiveness of treble damages suits.'") (quotations and citations omitted)[12]

The Complaint makes no proximate cause allegation and there is no rational nexus between the Patriots' alleged infraction of a League rule and the damages alleged by plaintiff, particularly given the absence of any allegation, or any basis to assert, that the Patriots committed the infraction for the purpose of depriving the plaintiff of the value of his tickets. *See In re College Bound Consol. Litig.,* 1995 U.S. Dist. LEXIS 10684, *39-42 (S.D.N.Y. July 31, 1995) (injury to plaintiff was neither the preconceived purpose nor the specifically intended consequence of defendants' acts and, therefore, the unintended victim of the scheme lacked standing to assert a RICO claim).

---

[11] *See also Callahan v. A.E.V., Inc.,* 182 F.3d 237, 260-268 (3d Cir. 1999) (applying *Holmes* and dismissing plaintiff's RICO claims on proximate causation grounds); *Longmont United Hosp. v. Saint Barnabas Corp.,* 2007 WL 1850881, *4 (D.N.J. Jun. 26, 2007) ("The key issue [in determining standing under RICO] is whether Plaintiffs' injury was proximately caused by Defendant's violation of 18 U.S.C. § 1962.") (quotations and citations omitted).

[12] *See also Anza v. Ideal Steel Supply Corp.* 547 U.S. 451, 470 (2006) (holding that the lower court, "by limiting RICO plaintiffs to those who are 'the targets, competitors and intended victims of the racketeering enterprise,' outlined a proximate-causation standard that falls well in line both with the reasoning behind having a proximate-cause requirement at all, and with the traditional applications of this standard to tortfeasors who caused injury only through a two-step process."); *Baisch v. Gallina,* 346 F.3d 366, 374 (2d Cir. 2003) ("the reasonably foreseeable victims of a RICO violation are the targets, competitors and intended victims of the racketeering enterprise") (citations omitted).

6.   **Count VI - Violation Of Plaintiff's Rights As A Third Party Beneficiary**

Plaintiff's claim for violation of his "rights as third party beneficiaries" also does not state a claim for relief.  The case at bar is identical in all material respects to *Castillo v. Tyson*, 701 N.Y.S.2d 423, 425 (N.Y. App. Div. 2000).  In *Castillo*, fans brought a class action against boxer Mike Tyson, fight promoters, and fight telecasters, seeking a refund of money they paid to see a fight in which Tyson was disqualified for biting Evander Holyfield's ear.  *Id.* at 336.  Just as the plaintiff in the case at bar claims to have "fully anticipated and contracted for a ticket to observe an honest match played in compliance with all laws and regulations" (*see* Cmplt. ¶ 2), the plaintiffs in *Castillo* claimed they were entitled to see a "legitimate heavyweight title fight" fought "in accordance with the rules and regulations."  *Id.* at 336.  The court in *Castillo* briefly summarized the plaintiffs' "many legal theories" and affirmed their dismissal as meritless.  In so doing the court noted there was no contractual privity between fans and the defendants and noted that the plaintiffs' claim that they were third-party beneficiaries of "one or more of the contracts that defendants entered into among themselves" was "aptly rejected by the motion court as 'contrived.'"  *Id.* at 337.

Here the Complaint merely speculates as to the existence of a contract to which the plaintiff might be a third-party beneficiary.  *See* Cmplt. ¶¶ 103 and 104 (referring to contracts between the Jets and the Patriots "*and/or*" the NFL); *Trans World Technologies, Inc. v. Raytheon Co.*, 2007 WL 3243941, *3 (D.N.J. Nov. 1, 2007) (to survive a motion to dismiss, a plaintiff's factual allegations must be "enough to raise a right to relief above the speculative level").  The Complaint does not identify any particular contract, or even the parties to any such a contract, to which plaintiff is an intended third-party beneficiary.  Having not identified any relevant

23

contract, the Complaint obviously fails to allege that plaintiff was an intended beneficiary of any such contract.[13]

### 7.   <u>Count VII - "Contract"</u>

Plaintiff's seventh cause of action alleges that he has a "quasi contract" with the Patriots. *See* Cmplt ¶ 108.  Here too, there are no allegations in the Complaint to support the claim. Under New Jersey law, "to establish a claim for unjust enrichment, 'a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust.' That quasi-contract doctrine also 'requires that plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights.'" *Iliadis v. Wal-Mart Stores, Inc.*, 191 N.J. 99, 110, 922 A.2d 710, 723 (2007) (*quoting VRG Corp. v. GKN Realty Corp.,* 135 N.J. 539, 554, 641 A.2d 519 (1994)). *See also Cohen v. Home Ins. Co.,* 30 N.J. Super. 72, 82, 552 A.2d 654, 659 (App. Div. 1989) ("It is consequently only necessary for plaintiff to prove that defendant received a benefit from plaintiff which it is unjust for him to

---

[13] *See, e.g., Grand Street Artists v. General Elec. Co.*, 19 F. Supp. 2d 242, 253 (D. N.J. 1998) ("A plaintiff asserting third party beneficiary status must establish that the contract was made for the benefit of that third party within the intent and contemplation of the contracting parties . . . A plaintiff must: show more than that the contracting parties acted against a backdrop of knowledge that the plaintiff would derive benefit from the agreement.  The plaintiff must show the benefit to the plaintiff was a consequence the parties affirmatively sought; in other words, the benefit to plaintiff must have been, to some extent, a motivating factor in the parties' decision to enter the contract.") (citations omitted). *See also Dravo Corp. v. Robert B. Kerris, Inc.*, 655 F.2d 503, 510 (3d Cir. 1981) ("The essence of contract liability to a third party is that the contract be made for the benefit of said third party within the intent and contemplation of the contracting parties. Unless such a conclusion can be derived from the contract or surrounding facts, a third party has no right of action under that contract despite the fact that he may derive an incidental benefit from its performance . . .  New Jersey courts have been hesitant to imply a third-party beneficiary obligation without an explicit indication by the parties that not only is the claimant an incidental beneficiary of the proposed arrangement, but also that it will have a direct claim under the contract.") (citations omitted).

retain without compensation, and that plaintiff, in conferring the benefit, expected remuneration.") (citations omitted). The plaintiff does not -- and cannot -- allege any one of the elements of a quasi contract claim.

      8.    **Count VIII - New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 *et. seq.***

      (a)    *The New Jersey Consumer Fraud Act does not govern in this case.*

Plaintiff's last cause of action against the Patriots is for violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 *et. seq.* (the "Act" or the "CFA"). Plaintiff fails to state a claim for violation of the CFA because the Act only applies to parties that act deceptively "in connection with the sale or advertisement of any merchandise or real estate." *See* N.J.S.A. 56:8-2 (emphasis added). "The Act directs its focus at products and services sold to consumers in the ordinary sense . . . ." *Del Tufo v. Nat'l Republican Senatorial Comm.*, 248 N.J. Super. 684, 688, 591 A.2d 1040, 1042 (Ch. Div. 1991); *see also O'Loughlin v. Nat'l Comm. Bank*, 338 N.J. Super. 592, 605, 770 A.2d 1185, 1193 (App. Div. 2001) ("The unlawful practices that are proscribed by N.J.S.A. 56:8-2 of the Consumer Fraud Act are required to be 'in connection with the sale or advertisement of any ... real estate, or with the subsequent performance of such person as aforesaid'"); *Neveroski v. Blair*, 141 N.J. Super. 365, 378, 358 A.2d 473, 480 (App. Div. 1976) ("[T]he entire thrust of the Consumer Fraud Act is pointed to products and services sold to consumers in the popular sense."). There is no allegation -- nor could there be -- that the Patriots had any involvement in the sale or advertisement of tickets to the plaintiff.

      (b)    *Plaintiff does not allege that the Patriots had the specific intent to induce him to purchase tickets*

Even if the CFA applied to the conduct alleged, the Complaint fails to state a claim for relief under the Act for one of the same reasons it fails to state a claim for common law fraud: it does not allege and cannot in good faith or plausibly allege that the reason the Patriots did not

25

disclose their intent to videotape signals from the sidelines was because, when they decided to use a video recorder, they were trying to induce New York Jets fans to buy tickets to the games at issue.   Since the plaintiff alleges the Patriots to have defrauded him, not by way of an affirmative misrepresentation, but by "concealing" their intent to "break the rules," an *intent to deceive* must be alleged to state a claim for violation of the CFA.[14]

Plaintiff's allegations do not create a claim under the CFA, nor do they meet the particularized pleading standard under Rule 9(b).   *See Parker v. Howmedica Osteonics Corp.*, 2008 WL 141628, *2 (D.N.J. Jan. 14, 2008) ("Importantly, [New Jersey Consumer Fraud Act] claims 'sounding in fraud' are subject to the particularity requirements of Federal Rule of Civil Procedure 9(b)."); *Naporano Iron & Metal Co. v. Am. Crane Corp.*, 79 F. Supp. 2d 494, 510 (D. N.J. 1999) (where plaintiff's CFA claim included allegations of fraud, deception and misrepresentation, and thus this claim "'sound[ed]' in fraud," plaintiff was "not exempt . . . from the requirement of particularized pleading.").

---

[14]  *See Fenwick v. Kay Am. Jeep, Inc.*, 72 N.J. 372, 378, 371 A.2d 13, 16 (1977) (under Consumer Fraud Act, "requirement that knowledge and intent be shown is limited to the concealment, suppression or omission of any material fact."); *Wendling v. Pfizer, Inc.*, 2008 WL 833549, *4 (N.J. Super. Ct. App. Div. Mar. 31, 2008) ("[W]hen the alleged [consumer fraud] violation consists of an omission, a plaintiff must show that the defendant acted with knowledge. Thus, intent *is* an essential element of the fraud in the case of an omission.") (quotations and citations omitted) (emphasis in original); *Leon v. Rite Aid Corp.*, 340 N.J. Super. 462, 469, 774 A.2d 674, 678 (App. Div. 2001) (Consumer Fraud Act "distinguishes between wrongs committed by affirmative acts and wrongs committed by a failure to act. As to those violations committed by omission, a plaintiff must demonstrate a defendant's knowledge and intent."); *Miller v. Am. Family Publishers*, 284 N.J. Super. 67, 75, 663 A.2d 643, 647 (Ch. Div. 1995) (intent is an element of the offense when the alleged unlawful practice is an omission, and accordingly, the consumer must show that the perpetrator intended to commit the unlawful practice).; (citations omitted);.

26

     (c)     *The Complaint fails to allege a causal relationship between the Patriots'*
*videotaping and the amount paid for the tickets.*

As with the plaintiff's RICO claim, the lack of causal connection between the videotaping of coaches' signals and the alleged injury -- the loss of the amount paid to attend the games at issue -- requires the dismissal of plaintiff's CFA claim. In order to state a claim under the CFA, "plaintiffs must . . . plead and prove a causal nexus between the alleged act of consumer fraud and the damages sustained." *New Jersey Citizen Action v. Schering-Plough Corp.*, 367 N.J. Super. 8, 15, 842 A.2d 174, 178 (App. Div. 2003); *see also F.C.V., Inc. v. Sterling Nat'l. Bank*, 2006 WL 1319822, *6 (D.N.J. May 12, 2006) ("With respect to damages, Plaintiffs face the challenge of establishing proximate cause for success on the Consumer Fraud Act claim."). In order to establish proximate cause, a plaintiff must demonstrate that the prohibited act in fact "misled, deceived, induced or persuaded the plaintiff to purchase defendant's product or service," and thus there is "some 'direct relation' between the unlawful conduct and the injury asserted." *Debra F. Fink, D.M.D., MS, PC v. Ricoh Corp.*, 365 N.J. Super. 520, 574, 239 A.2d 942, 976 (Law Div. 2003) (citations omitted). In claims under the CFA, "proximate cause must be limited to those cases which are so closely connected with the result and of such significance that the law is justified in imposing liability." *Id.* (quotations and citations omitted). The Complaint makes no allegation of proximate cause. Moreover, the Patriots' alleged videotaping has no "direct relation" to damages alleged by plaintiff. For this reason as well, therefore, the Court must dismiss the plaintiff's claim for violation of the New Jersey Consumer Fraud Act.

099999.00200/50362190v.1

## V.    CONCLUSION

For all of the foregoing reasons and those set forth in the brief of the National Football League, defendants The New England Patriots L.P. and Bill Belichick respectfully request that the Complaint be dismissed with prejudice in its entirety.

Stephen M. Orlofsky
New Jersey Resident Partner
David C. Kistler
**BLANK ROME LLP**
301 Carnegie Center Drive, Suite 301
Princeton, NJ 08540
Telephone: (609) 750-7700
Facsimile (609) 750-7701

-and-

Daniel L. Goldberg *(pro hac vice pending)*
Charles L. Solomont *(pro hac vice pending)*
Lisa E. Kirby *(pro hac vice pending)*
**BINGHAM MCCUTCHEN LLP**
150 Federal Street
Boston, MA 02110
Tel: (617) 951-8000
Fax: (617) 951-8736

*Attorneys for Defendants*

THE NEW ENGLAND PATRIOTS, LP AND
BILL BELICHICK

October 9, 2008

28