Bruce I. Afran
**BRUCE I. AFRAN, ESQ.**
10 Braeburn Drive
Princeton, NJ 08540
Telephone : (609) 924-2075
Facsimile: (609) 924-1045

Carl J. Mayer, Esq.
**MAYER LAW GROUP LLC**
66 Witherspoon Street, Suite 414
Princeton, NJ 08542
Telephone:  (609) 921-8025
Facsimile:  (212) 382-4687

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Carl J. Mayer, on behalf of himself and all others similarly situated,<br>　　　　　Plaintiffs,<br>　　v.<br><br>Bill Belichick; The New England Patriots;<br>and the National Football League,<br>　　　　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

CIVIL ACTION NO. 07-4671 (GEB)

HON. GARRETT E. BROWN, CHIEF JUDGE

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT NATIONAL FOOTBALL LEAGUE'S  MOTION TO DISMISS

TABLE OF CONTENTS

ARGUMENT …………………………………………………..……… 4

THE COMPLAINT STATES VALID CAUSES OF ACTION AGAINST THE
NFL

A.  THE NFL'S REHASHED ARGUMENTS THAT THIS CASE IS ABOUT
"FAN EXPECTATIONS" FAILS TO PROVIDE A BASIS FOR DISMISSAL   5

 B.  PLAINTIFF HAS PLED BOTH CONTRACT AND QUASI-
CONTRACT CLAIMS AGAINST THE NFL.                        10

*C.  SHUBERT*, EVEN IF STILL GOOD LAW, EXPRESSLY PERMITS
THE PLAINTIFF'S CONTRACT CLAIM TO GO FORWARD.          19

D.  NOWHERE IN THE NFL'S CONSTITUTION DOES IT INVEST THE
LEAGUE WITH POWER TO ADJUDICATE TICKETHOLDER CLAIMS
AND THE TICKETHOLDERS HAVE MADE NO AGREEMENT TO
GIVE UP LEGAL REDRESS IN FAVOR OF NFL ARBITRATION.     20


CONCLUSION ……………………………………………..…  24

TABLE OF AUTHORITIES

*Bowers v. Fed'n Internationale de L'Automobile*, 489 F.3d 316 (7th Cir. 2007)      6,7,8

*Castillo v. Tyson,* 701 N.Y.S.2d 423 (App.Div 2000)      7,8

*Confer v. Custom Eng'g Co.,* 952 F.2d 34, 41 (3d Cir. 1991)      13,14

*Crowther v. Micucci*, 122 N.J. Eq. 81, 89 (Chan. 1937)      14

*Griffith v. Rittenhouse Park Cmty. Association*, 215 N.J. Super. 444      14
(Chancery 1986)

*Marchak v. Claridge Commons, Inc*., 134 N.J. 275 (1993)      20

*Perini Corp. v. Greate Bay Hotel & Casino, Inc*., 129 N.J. 479 (1992)      16,20,21

*Shubert v. Nixon Amusement Co*., 83 N.J.L. 1010 (1912)      17,18,19

*Thalman v. Canon*, 24 N.J. Eq. 127, 131 (Chan. 1873)      15

*Tretina Printing, Inc. v. Fitzpatrick & Assoc., Inc.,* 135 N.J. 349 (1994)      20

*Uston v. Resorts International Hotel, Inc.*, 89 N.J. 163 (1982)      17,18

*Shaw v. Dallas Cowboys Football Club*, 172 F.3d 299 (3d Cir. 1999)      16

*Spolitback v. Cyr Corp*., 295 N.J. Super. 264 (App.Div. 1996)      20


15 USCS § 1291      16

## INTRODUCTION

This Memorandum of Law is respectfully submitted in opposition to defendant National Football League's (NFL) motion to dismiss.

## ARGUMENT

### THE COMPLAINT STATES VALID CAUSES OF ACTION AGAINST THE NFL

Lawyers for the NFL charge that "[p]laintiffs lawsuit is plainly frivolous and unsupportable, and appears to be more of a publicity stunt than a valid use of the judicial system." NFL Brief at 2.

Since none of the defendants, including the NFL, has moved for Rule 11 sanctions, we can dismiss this rhetoric as the standard hyper-ventilating of defense lawyers.  Senator Spector's investigation, Cmplt.,  ¶¶ 25-38, demonstrates the importance of such matters – a multi-year scheme to steal opponents' signals that represents perhaps the most significant and long-running fraud in the history of professional sports.

But, in deference to the NFL, plaintiffs will concede that the league, abetted by its lawyers, is probably the world's leading expert on "publicity stunts", including but not limited to: wardrobe malfunctions, nipple exposure, blimps, stadium parachuting daredevils, mother's admonishing soup-eating football players, endless cheerleader calendars, bobble-head

merchandise, non-stop alcohol advertisements, interminable Super Bowl commercials and spectacles and others stunts too numerous and lacking in any socially redeeming value to mention.

But such high jinx belie serious and very valid issues about whether the New England Patriots (and the NFL through its destruction of evidence documenting the Patriot's long-running scheme) were inducing fans to buy tickets by fraudulently claiming that games were honest contests played according to the rules, when, in fact, they were not. To the contrary, as the Amended Complaint makes clear, the Patriots' actions, abetted by the NFL's destruction of evidence, comprise a multi-year open-ended scheme to defraud ticketholders, the ultimate providers of the revenue for this $6.3 billion consumer industry.

A. **THE NFL'S REHASHED ARGUMENTS THAT THIS CASE IS ABOUT "FAN EXPECTATIONS" FAIL TO PROVIDE A BASIS FOR DISMISSAL.**[1]

The NFL's claim that the cases they cite rested on "disappointed expectations" is misleading and inaccurate.  First, the cases cited by the NFL almost all involve fans suing for a one-time incident at a professional

---

[1] In their brief the NFL string cites without any analysis and largely rehashes the arguments and cases cited by defendants Belichick and the New England Patriots.  Plaintiffs hereby incorporate by reference all arguments previously made as to defendants Patriots and Belichick.

sporting event.  In the case at bar, plaintiff alleges systematic, ongoing fraud that that is not about subjective fan expectations, but instead involves objective violations of the NFL's own rules and the contract and fraud laws that protect ticketholders.

Bowers v. Fed'n Internationale de L'Automobile, 489 F.3d 316 (7th Cir. 2007), held, inter alia,  that the defendant could not be held liable for any breach because the defendant owned only the stadium and did not control what occurred in the stadium; in the case at bar the Patriots control what occurs on the field. The Seventh Circuit made clear in Bowers that the plaintiffs did not adequately plead a contract violation since there was no contract with a participant of the sporting event but only with the stadium owner who could not control the players' actions. Id. at 321 ("The plaintiffs provide us no reason not to construe their tickets this way. While one could contract to provide a spectacle…").  In contrast, the Patriots and the Jets did contract to provide what the ticket describes as an "NFL" game governed by certain express understandings.[2]

_____

[2] The opinion in Bowers effectively explains that the old common law limitation of a ticketholders' rights to those of a "licensee" is to be understood in the context of a defendant who cannot control the event because he is not a participant but merely the owner of the venue and hence

*Bowers* is also distinguishable because no systematic fraud was alleged but only a one-time incident in which six motor teams raced instead of the standard 12 teams.  The Court dismissed the action in large part because the running of six racing teams was *not* a violation of league rules but represented the minimum number of permitted teams.  On this basis *Bowers* held that no claim for breach can arise since no violation of league rules occurred.  In contrast, there is no dispute that the theft of opponents' signals is a violation of a basic NFL rule.

Similarly, in *Castillo v. Tyson,* 701 N.Y.S.2d 423 (App.Div 2000), another case relied on by the NFL, although plaintiffs alleged that boxing regulations had been broken because the fight ended with a disqualification not a knockout (KO) or technical knockout (TKO), the court dismissed the action because disqualification of a fighter was a third outcome directly permitted by league rules.

---

cannot promise an outcome but only access.  If, as defendants here allege, the common law prohibited an action for fraud or breach against a *participant* there would have been no reason for *Bowers* to have noted that the defendant was merely the venue owner without control over the outcome.

Bowers and *Tyson* are to the same effect: in both cases the court ruled that since the alleged violation was actually *within* the league rules and was *allowed* by the league rules, the ticketholder has no claim for damages.  In *Bowers*, the court held that the use of six teams instead of 12 was not a violation of the Federation Internationale regulations and in *Tyson* the court held that a fight ending in disqualification of a fighter rather than a KO or TKO was also a result contemplated by the rules.  Hence, *Bowers* and *Tyson* are wholly distinguishable: in both the claim for damages was based on an act by the participants that did *not* violate league regulations and in *Bowers*, in particular, the court dismissed the action because it found that the defendant stadium owner *did not* and *could not* control the players' actions.

Similarly, the other three cases cited by the NFL – *Strauss*, *Stern* and *Seko* - all involved fans that objected to the play of a team or to the absence of a star player, none of which violated league rules and none of which involved a lengthy pattern of fraud and misrepresentation specifically in violation of league rules as alleged here.   See NFL brief at 6.

In contrast, in the case at bar, there is no dispute that the videotaping and theft of opponents' signals is an *ultra vires* act by the Patriots that is outside of NFL rules.  Plaintiffs plead that the Patriots' theft of Jets signals

over a seven-year period violated the fundamental governing principle of the game, to wit: that NFL teams are to compete strategically and tactically without illicitly-obtained knowledge of their opponents' signals and plays. Commissioner Goodell himself confirmed that the Patriots' actions violated League rules and deprived ticketholders of the opportunity to witness "honest competition".  Cmplt., ¶18.  Ultimately, whether this happened is a matter for the jury to decide – it is certainly beyond the Court's power at this stage to find no claim as a matter of law.[3]

In one very real sense Defendant NFL is correct that this case is about "expectations", namely the expectation of the ticketholder to see and attend a football game that, in exchange for the payment of substantial sums by ticketholders, is played subject to the rule that no one team will steal proprietary signals and plays of the other thereby giving itself an advantage

_____

[3] The NFL's own investigation into what has become popularly known as the Patriots "Spygate" matter is confirmation that here the behavior of defendants was extraordinary and went well beyond NFL rule infractions. Presumably – although this is a question of fact -- the investigation undertaken by Commissioner Goodell was undertaken under the "Unfair Acts" provision of the NFL rulebook. See www.nfl.com/rulebook/unfairacts. That provision allows the NFL commissioner to investigate "if any club action … occurs in an NFL game which he deems so unfair or outside the accepted tactics encountered in professional football that such action has a major effect on the result of a game … In all cases, the Commissioner will conduct a full investigation, including the opportunity for hearings, use of game videotape, and any other procedures he deems appropriate."

that destroys the basic expectation of honest play between two teams who

compete based on their own strategic and athletic skill.  Indeed, the

"expectation" of a ticketholder to pay to attend at such a game is the

fundamental basis for the expenditure of the massive sums that ticketholders

pay for the right to be present at NFL games.  Few, if any, rationale

ticketholders would pay large sums for the right to be present at rigged

games in which one team has stolen the signals of the other, destroying the

basic assumption of the sport. In any event, the ticketholder, like any other

consumer, has the right under ancient and universal common law to be

informed so as to make the decision to purchase tickets while invested with

the material facts of the transaction.


### B.  PLAINTIFF HAS PLED BOTH CONTRACT AND QUASI-CONTRACT CLAIMS AGAINST THE NFL.

Contrary to the NFL's claim, plaintiff specifically pled both contract

and quasi-contract with the NFL:  " By destroying evidence material to

ticketholders' claims of breach of contract and fraud arising out of the

Patriots' actions, the NFL has breached its contractual and quasi-contractual

duty to ticket holders, including plaintiff and the proposed class.  Cmplt. p.

127, 112.

As mentioned earlier, plaintiff's tickets explicitly provide for admittance to an "NFL" game which implies a game played under NFL rules. See Defendants' Ex. A.  As the franchisor allowing its tradename to be used in connection with such representations, and by assuming a duty as franchisor to investigate material wrongs by its franchisees, the NFL has accepted a contractual, or at the least a quasi-contractual, duty to the ticketholder. Just the fact of launching the investigation referred to above, Cmplt., ¶127,112, under the "Unfair Acts" provision is proof that the conduct of the Patriots was "outside the accepted tactics encountered in professional football" and is not merely a grievance by fans with "disappointed expectations".  Once undertaking a duty to investigate, the NFL then has an obligation to protect ticketholders.[4]  The complaint alleges

---

[4] Gasper, Christopher L. "Specter calls for independent investigation". *Boston.com* http://www.boston.com/sports/football/patriots/reiss_pieces/2008/05/specter _calls_f.html. Retrieved on 2008-05-14.  Without any discovery, there is evidence that the NFL investigation was flawed and incomplete.. A day after privately speaking with Walsh in his Washington D.C. offices, Senator Specter held a press conference to announce his desire for an independent investigation into the Patriots' videotaping practices. Specter cited Senator George J. Mitchell's  report ("The Mitchell Report") into steroids use in baseball as an example of an impartial, outside investigation.

that the NFL did not fully investigate and protect the fans and, by its

destruction of evidence, affirmatively breached such duty. [5]

    The complaint sets forth a contract between plaintiff and the NFL, on

the ground that since

> "the NFL has conveyed to itself the power to render internal league
> disciplinary findings, the NFL has assumed a duty to protect
> ticketholders' contractual rights…".  Cmplt., ¶125.

    The complaint goes on to assert that the NFL breached such

obligation through its destruction of evidence material to ticketholders'

claims:

> "By destroying evidence material to ticketholders' claims of breach of
> contract and fraud arising out of the Patriots' actions, the NFL has
> breached its contractual and quasi-contractual duty to ticket holders,
> including plaintiff and the proposed class."  Cmplt., ¶127.

---

[5] Reiss, Mike (2008-05-14). "Specter sound bites". *Boston.com*
http://www.boston.com/sports/football/patriots/reiss_pieces/2008/05/specter
_sound_b.html. Retrieved on 2008-05-14.  Specter said he believed there
was in a conflict of interest in the NFL's investigation of the Patriots'
practices, and criticized the NFL for allowing Patriots attorney Dan
Goldberg into Walsh's meeting with Goodell and letting him ask questions.
He also said that he felt the Patriots owed the public "a lot more candor and
a lot more credibility" in regards to their practices.

The complaint thus pleads a contract between the NFL and ticketholders under which NFL, by its own admission, has undertaken "a duty to protect ticketholders' contractual rights that are breached or potentially breached by fraudulent team management practices". Cmplt., ¶125.

The complaint further alleges that the NFL breached such duty "by destroying evidence material to ticketholders' claims of breach of contract and fraud arising out of the Patriots' action…".  Cmplt., ¶127.  And, that such destruction of tapes "materially impugns and prejudices ticketholders' rights to seek judicial remedy and damages."  Cmplt., ¶126.

While such claim may more properly sound in a quasi-contract or breach of fiduciary duty than a conventional contract action, the Amended Complaint more than gives notice of such cause of action, alleging that the NFL assumed a duty to gather and collect evidence as to team violations for the purpose of protecting ticketholders' rights, that by destroying such evidence instead of preserving it NFL failed to protect ticketholders' rights and that NFL is liable to ticketholders for breach of such assumed duty. Cmplt., ¶125,126,127.

Such assertions properly state a claim for breach of an implied or quasi-contractual duty and the motion to dismiss should be denied. *Cf. Confer v. Custom Eng'g Co.,* 952 F.2d 34, 41 (3d Cir. 1991) (Complaint dismissed for failure to "allege facts or make specific allegations showing the actual fiduciary authority"). The Complaint expressly alleges that the NFL assumed a duty to ticketholders by undertaking to render internal league discipline for the purpose of "protecting ticketholders' contractual rights that are breached …by fraudulent team management practices." Cmplt., ¶125. Thus the complaint does "allege facts or make specific allegations", *Cf. Confer, supra*, setting forth the claim of a duty and breach thereof by the NFL. A duty once assumed cannot be abrogated at will. *Griffith v. Rittenhouse Park Cmty. Association*, 215 N.J. Super. 444, 449 (Chancery 1986) ("Levitt could not, as seller, make representations that lawns would be maintained, while avoiding that obligation through the association it controlled. To do so would constitute a breach of its fiduciary obligation. The lawn-care obligation, once assumed, continues.") Similarly, the NFL, having asserted that it and only it has complete control over team discipline even as to claims by ticketholders admits a duty to protect the ticketholder's interest. *Crowther v. Micucci*, 122 N.J. Eq. 81, 89 (Chan. 1937)(An "assumption of complete control" over another's affairs "created

the fiduciary relation."). *Thalman v. Canon*, 24 N.J. Eq. 127, 131 (Chan. 1873)(One who is "entrusted" with another's interests and "undertook to protect them" assumes "fiduciary relations…binding and complete".)

The NFL and the Patriots are effectively seeking to maintain two contradictory positions: 1) that the ticketholder has no rights that can be wronged or remedied because the NFL has assumed the duty of investigation and discipline for the ticketholder; and 2) that despite its self-assumed duty of investigation and discipline on behalf of the ticketholder that the NFL need not answer to the ticketholder for a breach of such duty.  Such legal argument, if accepted by the Court, would leave ticketholders, who spend thousands of dollars annually for what defendants call a mere "license", with no remedy against either the team that violates the "license" or against the NFL that claims it has assumed duty to punish such violations.  Under the scenario laid out by the defendants, the Patriots are free to defraud ticketholders and interfere with their contact with the home team free of any liability and the NFL may abrogate and neglect its self-assumed duty to protect the ticketholder and also remain free of liability.

No case recognizes such a self-created exemption from ordinary legal process and remedy.  Such a legal regime would leave the consumers of a

6.3 billion dollar industry, supported entirely by ticket purchases, with no

rights or remedies against the team or the franchisor (the NFL) that has

assumed a duty to protect the ticketholder.  Even the NFL's anti-trust

exemption, 15 USCS § 1291, is limited to television pooling arrangements

and provides no other form of legal immunity.  Moreover, such exemptions

are to be narrowly construed and permit even suits against sports leagues for

anti-trust violations outside of the narrow area of protection available under

the statute.  See e.g., *Shaw v. Dallas Cowboys Football Club*, 172 F.3d 299,

301 (3d Cir. 1999) (holding that the NFL can be sued for anti-trust violations

arising out of the sale of packaged broadcast games since the league's

exemption applied only to free broadcasts and "must be narrowly

construed").  Surely, if the NFL is susceptible to suit for anti-trust violations

despite its federal anti-trust exemption, it is clear that its organization as a

sports league provides no legal immunity from judicial redress absent

express agreement by the ticketholder.   See e.g. *Perini Corp. v. Greate Bay

Hotel & Casino, Inc*., 129 N.J. 479, 490, 610 A.2d 364 (1992).

By their arguments, the NFL and the Patriots would impose

upon this Court a circular system of law that provides no rights to

ticketholders despite their substantial investment in their tickets and gives

only remedies to the team and its franchisor, the NFL.  Certainly the Patriots

and other teams reserve the right to remove ticketholders who behave rudely, violently or improperly without refund – such is an implied understanding of the relationship between team and ticketholder, confirmed over many decades by public notice and announcements.  In the same way, ticketholders have the experience of decades of direct and implied representations that the NFL games in which they invest so much of their earnings and assets, are played honestly and without the theft of opponents' plays and signals.  A team that proceeds to undertake such a scheme violates a decades-long implied understanding as deep rooted as that which permits removal of a violent ticketholder without refund.

But both the Patriots and the NFL suggest that they have no obligations to the ticketholder except to provide admittance to the stadium. Under the logical reasoning of this theory, supported by either discredited jurisprudence, *Shubert v. Nixon Amusement Co*., 83 N.J.L. 1010 (Sup.Ct. 1912), overruled by *Uston v. Resorts International Hotel, Inc.*, 89 N.J. 163, 445 A.2d 370 (1982), or cases involving promoters who have no control over the participants' acts, *see, e.g., Bowers, supra*, or cases that did not involve violations of league rules, *Bowers, Tyson*, the NFL and the Patriots would have this court accept that the ticketholder has no rights at all under law or equity.  Such reasoning leads to the inevitable result that professional

sports teams, operas, orchestras, Broadway theatres and the like are free to perpetrate virtually any deception upon ticket purchasers and be immune from liability in the name of "entertainment" and that any attempt to remedy a fraud in such context is to be dismissed under the banner of disappointed "expectations".

Such a sweeping proposition is not and cannot be our law.  Indeed, the New Jersey Supreme Court in *Uston v. Resorts International Hotel, Inc.*, 89 N.J. 163, 445 A.2d 370 (1982), rejects this very proposition holding that the reasoning of *Shubert v. Nixon Amusement Co.,* 83 N.J.L. 101 (Sup.Ct. 1912) is no longer valid law or policy.  In view of the fact that *Shubert* purported to recognize the broad rule urged by defendants that a ticket is at best "a personal license, revocable at any time, and whose revocation would confer no right of action, except for the money paid, with such incidental damages as would arise from the expense and inconvenience of going to the theatre to no purpose," *Uston's* wholesale rejection of *Shubert* must be seen as a declaration that New Jersey public policy will *not* recognize such denigration of a ticketholder's rights. The denunciation of *Shubert* by the court in *Uston*, makes it clear that this ancient and hoary concept cannot be relied upon this State.

### C.  *SHUBERT*, EVEN IF STILL GOOD LAW, EXPRESSLY PERMITS THE PLAINTIFF'S CONTRACT CLAIM TO GO FORWARD.

*Shubert*, even if good law, offers no basis to defendants' motion as it would still allow an action for damages "for the money paid" with such "incidental damages" as arise from the "expense and inconvenience of going to the theatre to no purpose."  Id.  That is exactly what is sought in this case - a refund of "the money paid" to ticketholders who relied on the omissions of the Patriots' acts in purchasing tickets or whose contractual right were interfered with and diminished by the Patriots' scheme.  Cmplt., ¶ 64 ("Defendants…are liable to plaintiff and other members of the class for *restitution of the ticket prices* for each of said games…") (emphasis added).

Since the complaint seeks damages for restitution of the ticket price paid, even the doctrine relied upon by defendants – the now-discredited *Shubert* - provides no basis at all for the motion to dismiss in that *Shubert* expressly *permits* a "right of action…for the money paid."  *Shubert, supra*.

Thus, even the now-discredited reasoning of *Shubert* would permit this action to go forward at the threshold.

**D. NOWHERE IN THE NFL'S CONSTITUTION DOES IT INVEST THE LEAGUE WITH POWER TO ADJUDICATE TICKETHOLDER CLAIMS AND THE TICKETHOLDERS HAVE MADE NO AGREEMENT TO GIVE UP LEGAL REDRESS IN FAVOR OF NFL ARBITRATION.**

The defendant's argument that the ticketholder's rights are subsumed to the League's power to investigate and discipline rule violations must depend upon a demonstration that 1) the ticketholder has made some express waiver of his right to seek legal redress and 2) that the NFL itself has unambiguously assumed such power over ticketholder disputes with teams.

First, no waiver of any judicial remedy in favor of arbitration by the NFL can arise absent an express and knowing agreement. *Spolitback v. Cyr Corp.*, 295 N.J. Super. 264, 270 (App.Div. 1996) ("An election of remedies that has the effect of barring alternative relief must be knowingly and voluntarily made, see *Marchak v. Claridge Commons, Inc.*, 134 N.J. 275, 282, 633 A.2d 531 (1993), especially where the choice is to arbitrate disputes rather than to litigate them. See *Perini Corp. v. Greate Bay Hotel & Casino, Inc.*, 129 N.J. 479, 490, 610 A.2d 364 (1992); *cf. Tretina Printing, Inc. v. Fitzpatrick & Assoc., Inc.,* 135 N.J. 349, 360-61, 640 A.2d 788 (1994).") *Perini Corp.*, *supra* at 490 ("Arbitration… is the *voluntary* reference of a dispute by the parties to…an arbitrator…chosen by the parties…") [emphasis added].  No contract by the ticketholder exists under

which the ticketholder has agreed that disputes with a competing team are to

be arbitrated by the NFL or any other party.  Certainly there has been no

"voluntary" reference of the ticketholder's claims to any arbitrator at all,

much less the NFL, "chosen" by the parties.  *Perini Corp., supra*.

Second, the NFL's own constitution, investing the Commissioner with

power to arbitrate team, coach and player disputes, invests <u>no</u> power to

adjudicate *ticketholder* disputes.

Section 8.3 of the NFL Constitution delineates the circumstances

under which the Commissioner can impose disciplinary findings and

nowhere provides that the NFL has power to adjudicate claims belonging to

ticketholders. Section 8.3 states:

> "The [c]ommissioner shall have full, complete, and final jurisdiction
> and authority to arbitrate:  (a) Any dispute involving two or more
> members of the League, or involving two or more holders of an
> ownership interest in a member club of the League, certified to him by
> any of the disputants.  (b) Any dispute between any player, coach
> and/or other employee of any member of the League (or any
> combination thereof) and any member club or clubs.  (c) Any dispute
> between or among players, coaches, and/or other employees of any
> member club or clubs of the League, other than disputes unrelated to
> and outside the course and scope of the employment of such
> disputants within the League. (d) Any dispute between a player and
> any official of the League.  (e) Any dispute involving a member or
> members in the League, or any players or employees of the members
> or the League, or any combination thereof, that in the opinion of the
> [c]ommissioner constitutes conduct detrimental to the best interests of
> the League or professional football.

Nowhere in this lengthy delegation of power to the Commissioner is there any grant of authority to adjudicate disputes on behalf of ticketholders. That Section 8.3 is intended as a limitation on the power of *teams*, *players* and *coaches* to pursue claims is demonstrated by the clear statement that "The [c]ommissioner shall have *full, complete, and final* jurisdiction and authority to arbitrate…" as to disputes between teams, employees, coaches or players.  Having declared that the Commissioner is the final arbiter of such internal disputes, the Constitution does not extend this jurisdiction to claims of ticketholders.

Hence, there is no basis for the NFL's or the Patriots' argument that the ticketholders' claims are subject solely and exclusively to the NFL's disciplinary process.  In fact, under section 8.3 of the NFL Constitution it would appear that the Commissioner has no power at all to adjudicate ticketholder's claims.  Since the ticketholder himself has made no waiver of such rights, it is plain that the ticketholder has not lost his right of access to ordinary legal process.

Based on the limited nature of the Commissioner's investigatory power, it is extremely doubtful that defendants can ultimately sustain a burden of proof that the ticketholder's rights are subsumed to the League's

power of investigation and discipline, much less sustain a motion to dismiss

on such grounds..  Thus, even at the threshold, there would appear to be little

basis for the NFL and the Patriot's assertion that the NFL's power of

investigation and arbitration extends to claims of ticketholders.

## <u>CONCLUSION</u>

For all of the foregoing reasons, plaintiff respectfully requests that defendants' motion to dismiss be denied.

Respectfully submitted,


S/Bruce I. Afran

**BRUCE I. AFRAN, ESQ.**
10 Braeburn Drive
Princeton, NJ 08540
Telephone : (609) 924-2075
Facsimile: (609) 924-1045

-and-

Carl J. Mayer, Esq.
**MAYER LAW GROUP LLC**
66 Witherspoon Street, Suite 414
Princeton, NJ 08542
Telephone:  (609) 921-8025
Facsimile:  (212) 382-4687


Attorneys for Plaintiffs

January 8, 2009