Stephen M. Orlofsky
New Jersey Resident Partner
David C. Kistler
**BLANK ROME LLP**
301 Carnegie Center Drive, Suite 301
Princeton, NJ 08540
Telephone: (609) 750-7700
Facsimile (609) 750-7701

and

Daniel L. Goldberg *(admitted pro hac vice)*
Charles L. Solomont *(admitted pro hac vice)*
Lisa E. Kirby *(admitted pro hac vice)*
**BINGHAM MCCUTCHEN LLP**
150 Federal Street
Boston, MA 02110-1726
Telephone:  (617) 951-8000
Facsimile:   (617) 951-8736

*Attorneys for Defendants*

THE NEW ENGLAND PATRIOTS, LP AND
BILL BELICHICK

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CARL J. MAYER, ON BEHALF OF HIMSELF AND ALL OTHER SIMILARLY SITUATED,<br><br>Plaintiffs,<br><br>vs.<br><br>BILL BELICHICK, THE NEW ENGLAND PATRIOTS, and THE NATIONAL FOOTBALL LEAGUE,<br><br>Defendants. | CIVIL ACTION NO. 07-4671 (GEB)<br><br>HON. GARRETT E. BROWN, Chief D.J.<br><br><br>ORAL ARGUMENT REQUESTED |

**REPLY OF DEFENDANTS THE NEW ENGLAND PATRIOTS, LP AND BILL BELICHICK IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS WITH PREJUDICE**

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| A. | PRELIMINARY STATEMENT ................................................................................1 | |
| B. | LEGAL ARGUMENT .................................................................................................3 | |
| | 1. Count I - Tortious Interference With Contractual Relations ................................3 | |
| | 2. Count II - Common Law Fraud .............................................................................6 | |
| | 3. Counts IV and V - the state and federal RICO claims ............................................7 | |
| | 4. Count VI - Violation Of Plaintiff's Rights As A Third Party Beneficiary ...........10 | |
| | 5. Count VII - Quasi-Contract/Unjust Enrichment ......................................................11 | |
| | 6. Count VIII - New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 *et. seq.* .............12 | |
| C. | CONCLUSION ..........................................................................................................15 | |

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Bonavitacola Elec. Contractor, Inc. v. Boro Developers, Inc.*, 87 Fed. Appx. 227
 (3d Cir. 2003)...................................................................................................8

*Bridge v. Phoenix Bond and Indemnity Co.*, 128 S. Ct. 2131 (2008) ..............................8, 9

*In re I.D. Craig Service Corp.*, 138 B.R. 490 (W.D.Pa. 1992)...........................................3

*International Social for Krishna Consciousness, Inc. v. New Jersey Sports and
 Exposition Authority*, 691 F.2d 155 (3d Cir. 1982) .........................................4

*Joe Hand Promotions, Inc. v. Mills*, 567 F. Supp. 2d 719 (D.N.J. 2008)..........................13

*Lightning Lube, Inc. v. Witco Corp.*, 802 F. Supp. 1180 (D.N.J. 1992), aff'd, 4
 F.3d 1153 (3d Cir. 1993) ................................................................................6

*Majka v. Prudential Insurance Co. of America*, 171 F. Supp. 2d 410 (D.N.J.
 2001) ...............................................................................................................2

*Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644 (3d Cir. 1998) ........................8

*Trustees of I.A.M. District Number 15 Health Fund v. Operant Material Solutions
 of New York New Jersey LLC, Slip Copy*, 2008 WL 4601792 (D.N.J. 2008) ...............2

## STATE CASES

*Beder v. Cleveland Browns, Inc.*, 129 Ohio App. 3d 188, 717 N.E.2d 716 (1998).........3, 7

*Castillo v. Tyson*, 701 N.Y.S.2d 423 (2000)................................................................5, 10

*Charpentier v. Los Angeles Rams football Co.*, 89 Cal. Rptr. 2d 115 (1999) .....................7

*Cohen v. Home Insurance Co.*, 230 N.J. Super. 72 (App. Div. 1989).........................11, 12

*D'Ercole Sales, Inc. v. Fruehauf Corp.*, 206 N.J. Super. 11 (App. Div. 1985) .................13

*Daaleman v. Elizabethtown Gas Co.*, 77 N.J. 267 (1978)...........................................12, 13

*Iliadis v. Wal-Mart Stores, Inc.*, 191 N.J. 88 (2007)..........................................................11

*Platinum Management, Inc. v. Dahms*, 285 N.J. Super. 274 (Law Div. 1995) ..................6

i

*Printing Mart v. Sharp Electronics*, 116 N.J. 739 (1989).......................................................6

*Shubert v. Nixon*, 83 A. 369 (N.J. 1912)................................................................................3

*Skalbania v. Simmons*, 443 N.E.2d 352 (Ind. App. 1982) ......................................................3

*State v. Bendix*, 396 N.J. Super. 91 (App. Div. 2007) ............................................................2

*Talalai v. Cooper Tire & Rubber Co.*, 360 N.J. Super. 547 (Law Div. 2001) ...................13

*Uston v. Resorts International Hotel, Inc.*, 89 N.J. 163 (1982)...........................................4

## STATE STATUTES

N.J.S.A. 56:8-1.......................................................................................................................12

N.J.S.A. 2C:21-7 .....................................................................................................................3

A. **PRELIMINARY STATEMENT**

Plaintiff apparently believes that his chances of surviving the Motion to Dismiss filed by the New England Patriots and Bill Belichick (collectively, the "Patriots") increase proportionally with the frequency of his use of inapplicable and inflammatory terms to describe the Patriots' videotaping Jets coaches' signals. This is the only explanation for his *repeatedly* mischaracterizing the Patriots' violation of an NFL rule of play as "fraud", "illegal" conduct, "stealing," "cheating", "fixing" games, and "rigging" games. The reality is that the <u>only</u> Patriots' action underlying the Complaint (the "Complaint" or ""Cmplt.") is the team's violation of one NFL rule. *See e.g.*, Complaint ¶¶ 2, 18, 19, 22, 31, 61,-63, 68, 70, 71, 79 n1. The NFL rule against the use of sideline video cameras to tape coaching signals merely reflects where the NFL has decided to draw the line concerning which types of observations and recordings of such signals the League permits and which it penalizes. Coaching signals are made in front of tens of thousands of observers. Videotaping them violates no statute or common law. (Indeed, the NFL requires that teams videotape the plays on the field and share those tapes with the League and other teams.) The NFL allows opposing teams to observe signal calling (whether for use in that game or a future game), to take detailed notes about the signals and ensuing plays, to try to decode the signals, to try to lip-read verbal commands, *etc.* It simply prohibits videotaping them. *See e.g.,* Complaint ¶ 19. Coach Belichick construed the rule as only prohibiting the use of videotaped signals during the game in which the recording was made. The League construed the rule more expansively and seriously punished the Patriots and the Coach. None of that opens the door to a cause of action by those who watched the game.

Nor can plaintiff bypass the fundamental flaw in his claim by asserting there was some misrepresentation or actionable omission. There is not a single representation alleged to have

been made by anyone that a game would be played without either unintentional or intentional rule violations or that observations of coaches' signals would not be taped. Indeed, no one with even a rudimentary exposure to the game of football would have a reasonable expectation that teams will never intentionally (or mistakenly) violate rules of play. Nor is there any applicable principle of law that obligates a team to disclose to fans what it plans to do to decode an adversary's signals or that it is going to violate a League rule.[1]

Plaintiff's Opposition takes aim at arguments not even made, grossly exaggerating defendants' arguments and then challenging those mischaracterized arguments. For example, the Opposition claims that "the Patriots and the NFL argue that fans have no recourse as consumers no matter what the teams and the league do." *See* Opp. p. 5. Of course, the defendants say no such thing. Defendants do not argue that they are immune from well-pleaded causes of action, whether in tort, contract or pursuant to statute. The only issue is whether the Complaint states a viable claim. On that point, and as detailed below, plaintiff ignores arguments and case law that establish that each of the counts of the Complaint fails to allege all necessary elements. Each of the points not addressed by plaintiff in his Opposition is, as a matter of law, deemed conceded -- and these concessions themselves are fatal to the Complaint.[2]

---

[1] Plaintiff's use of inapplicable and illogical hypotheticals only emphasizes the paucity of support for the claims that are made. Violating a rule of play regarding how an adversary's signals can be observed and recorded is scarcely analogous to poisoning the opposing team (*see* Opp. p. 2) or to fielding two high school teams instead of the NFL teams that patrons have purchased tickets to watch (*see* Opp. p. 18). The former is a crime and the latter is offering a different product than what the ticket to an NFL game specifies-- *i.e.*, what teams will be competing.

[2] *See e.g., Trustees of I.A.M. Dist. No. 15 Health Fund v. Operant Material Solutions of New York New Jersey LLC*, Slip Copy, 2008 WL 4601792, *2 n.1 (D.N.J. 2008) (granting motion to dismiss after finding that, by "declin[ing] to address" points made in defendant's brief, the plaintiff "conced[ed] defeat."); *Majka v. Prudential Ins. Co. of America*, 171 F.Supp. 2d 410, 414 (D.N.J. 2001) ("Plaintiff appears to concede this point as she does not address the issue at all
. . . *Continued*

The Opposition does not address the Patriots' Motion as to Count III of the Complaint (for violation of N.J.S.A. 2C:21-7, entitled "Deceptive Business Practices"). Dismissal of that count is thus conceded. This Reply addresses the other counts against the Patriots.

### B. LEGAL ARGUMENT

#### 1. Count I - Tortious Interference With Contractual Relations

The first element of a claim for interference with contractual relations is the existence of a contract or, at a minimum, an arrangement that gives rise to some reasonable expectation of economic advantage. *See* Memo p. 7. In its Memo, the Patriots asserted that, given the nature of tickets to an NFL game, and since, under *Shubert v. Nixon*, 83 A. 369 (N.J. 1912), tickets to entertainment venues are, as a matter of law, *revocable* licenses,[3] *not contracts*, plaintiff's purchase of Jets tickets gave him no "reasonable expectation of economic advantage." Plaintiff's tickets were at all times revocable for any non-discriminatory reason. Memo at pp. 7-8.

---

in her opposition to Defendants' Motion for Summary Judgment. Accordingly, Plaintiff's state law claims will be dismissed with prejudice"). *Accord State v. Bendix*, 396 N.J. Super. 91 (App. Div. 2007) ("the State's appellate brief does not address the issue and we deem the State to have thus conceded the point.").

[3] Plaintiff does not deny that *Shubert* holds that a ticket for admission to an entertainment venue is a revocable license which can be revoked with or without reason. Opp. pp. 10-11. In *Shubert*, an ejected theatre patron brought claims for "tort" and violation of the civil rights act arising from his ejection from a theatre before a performance. 83 A. at 369. *Shubert* holds that, because the ticket was a revocable license, no common law claim lies for its revocation. *Id.* (*Shubert* also holds that, because the complaint did not allege the plaintiff to have been ejected because of race, color, *etc.*, it stated no claim for violation of the civil rights statute. *Id.* at 369.). Nor does plaintiff address the great weight of authority from other jurisdictions that likewise treats tickets to sporting events as revocable licenses. *See* Patriots' Memo at p. 7 n. 3. **In contrast**, plaintiff cites only one Ohio state court intermediate appellate level case, *Beder v. Cleveland Browns, Inc.*, 129 Ohio App. 3d 188, 195 717 N.E.2d 716, 720 (1998), for the proposition that a "season ticket package . . . constituted a contract." *See* Opp. pp. 12-14; but, even in that case, the issue of whether such tickets are contracts, *as opposed to licenses*, is not addressed. The other two cases cited by plaintiff on the issue, *In re I.D. Craig Service Corp.*, 138 B.R. 490 (W.D.Pa. 1992) and *Skalbania v. Simmons*, 443 N.E.2d 352 (Ind. App. 1982) do not hold that tickets are not revocable licenses. Indeed, the former expressly notes that "the fact that each ticket is a revocable license is not disputed." 138 B.R. at 494.

3

Plaintiff's response, that *Uston v. Resorts International Hotel, Inc.*, 89 N.J. 163 (1982), overruled *Shubert*, wholly misstates the holding of *Uston*.

*Uston* addressed whether a casino could eject a gambler because he was "counting cards." 89 N.J. at 165-66. The casino admitted the public; it did not require a ticket for admission. *Id.* The Commissioner of Casinos held that the casino "enjoyed a common law right to exclude anyone it chooses, as long as the exclusion does not violate state and federal civil rights laws." 89 N.J. at 167. On appeal, the New Jersey Supreme Court held that the case could not be decided based on the common law because, with respect to everything related to casinos, the Casino Control Act abrogated the common law. 89 N.J. at 167-68. It nonetheless addressed in an advisory opinion the scope of a property owner's common law right to exclude patrons from public places, such as casinos, *that do not require the purchase of tickets for admission*. *Id.*[4] Relying on the common law right of reasonable access to public places, *Uston* places limitations on the right of proprietors to eject individuals from such venues. 89 N.J. at 172-173. *Uston* in no manner overruled *Shubert's* holding that tickets for admission to entertainment events are not contracts but are mere licenses. Plaintiff's primary argument -- that *Schubert* was overruled by *Uston* -- is thus not only wrong, but misses the point of the argument and totally ignores the numerous other flaws in the tortious interference claim. A ticket to a sporting event, being a revocable license, cannot give rise to a reasonable expectation of economic advantage and a claim for tortious interference, since that ticket, barring unlawful discrimination, is revocable for any reason or no reason.

---

[4] *In contrast,* the Third Circuit has expressly held that the venue at issue in this case, the Meadowlands, is not a public forum. *International Soc. for Krishna Consciousness, Inc. v. New Jersey Sports and Exposition Authority*, 691 F.2d 155, 162 (3d Cir. 1982).

4

Even if a ticket were a contract giving the right to see a game and/or provided a reasonable expectation of economic advantage (as opposed to the ability merely to watch an NFL game in person), that gets plaintiff nowhere. Plaintiff does not claim he did not see the game in question. He asserts that he did not see a game free of infractions of the rules of play -- and more particularly, free from one team taping another's signals. Thus, unless a term of the purported "contract" entitled him to observe a game free of violations of rules or of the subject rule in particular, there can be no claim for tortiously interfering by taping the signal calling. *See* Memo pp. 8-9. Plaintiff does not -- and could not -- assert that the tickets expressly provide any such right. In an effort to overcome this fatal flaw, he now argues that there is an "*implied* contract requir[ing] the game to be played according to NFL rules." Opp. pp. 17-18. Neither law nor logic supports that argument. As the Patriots have briefed already, courts may only imply terms where the failure to do so will render the agreement unenforceable. *See* Memo p. 9.[5] As that is not the case here, there is no legally cognizable contract right with which the Patriots interfered.

---

[5] Further, even if such a term could be implied, the games at issue were played according to the NFL Rules insofar as the Rules embody both guidelines for on and off-field conduct and penalties for when teams operate outside such guidelines. Here, *in accordance with the Rules*, the League found that the Patriots' taping of opposing coaches' signals during a game (rather than, for example, observing them and/or taking notes about them), which are permitted by the Rules (*see* Cmplt. ¶ 19), was a violation and imposed a penalty that the Rules permit the League to impose. In that regard, plaintiff's effort, in his opposition to *the NFL's* motion to dismiss, to distinguish *Castillo v. Tyson*, 701 N.Y.S.2d 423 (2000), actually makes the Patriots' point. In *Castillo,* ticket purchasers, claiming that they were deprived of their right to view a fight "in accordance with the applicable rules and regulations" of the governing boxing commission, sought a refund when Mike Tyson was disqualified for biting off Evander Holyfield's ear. *Id*. at 424. The New York appellate court upheld the dismissal of all of the ticket purchasers' claims. *Id*. In his opposition to the NFL's motion, plaintiff asserts that the *Castillo* court so ruled because "the disqualification of a fighter was a[n] outcome directly permitted by the rules." *See* plaintiff's opposition to NFL's motion to dismiss at p. 7. Yet that is the exact same situation plaintiff presents here. As the Complaint details, in accordance with its rules, the NFL imposed penalties on the Patriots and Coach Belichick. *See e.g.,* Cmplt. ¶ 18.

Furthermore, the interfered-with economic advantage must result in a business injury, which plaintiff has not, and cannot, allege. *See Printing Mart v. Sharp Electronics*, 116 N.J. 739, 750-751 (1989) ("A complaint must demonstrate that a plaintiff was in "pursuit" of business.")[6]

The Opposition also ignores the Patriots' assertion that the Complaint fails to satisfy two other elements of a tortuous interference claim. First, in order to satisfy the "malicious intent" element, plaintiff must allege that the Patriots intended to interfere with *him in particular*. Memo p. 10. The Complaint not only fails to allege that, but it alleges that, to the contrary, the Patriots tried to acquire Jets' coaching signals "for the purpose of gaining competitive advantage" "for their own private benefit." Cmplt. ¶¶ 23, 63. Second, as noted in the Patriots' Memo, the tort requires proof that the defendant induced a third party to breach its agreement with plaintiff. Here, there is no allegation either that the Jets breached any obligation to plaintiff or that the Patriots induced the Jets to do *anything*. The Opposition does not even attempt to refute -- and hence concedes -- these Count I pleading failures.

### 2. Count II - Common Law Fraud

Plaintiff's Opposition *entirely* ignores the bases for the dismissal of plaintiff's fraud claim set forth in the Patriots' Memo. The Memo identified two primary, fatal defects. First, since the Complaint alleges *no* affirmative misrepresentation, but rather only that the Patriots "concealed and omitted to [] disclose" an intent to record the Jets' signals (*see* Cmplt. ¶ 71), dismissal is required because the Patriots did not have the type of "special relationship" with

---

[6] *See also Lightning Lube, Inc. v. Witco Corp.*, 802 F. Supp. 1180, 1991 (D.N.J. 1992), aff'd, 4 F.3d 1153 (3d Cir. 1993) ("The elements necessary to assert this claim are set forth in *Printing Mart*: (1) A complaint based on tortious interference must allege facts that show some protectable right--a prospective economic or contractual relationship ... A complaint must demonstrate that a plaintiff was in "pursuit" of business "); *Platinum Management, Inc. v. Dahms*, 285 N.J. Super. 274, 305 (Law Div. 1995) ("plaintiff must have a reasonable expectation of economic advantage (i.e.*,* plaintiff was "in pursuit of business")).

plaintiff that must exist to create a duty to disclose. Memo pp. 11-12. Second, even if such a duty existed, plaintiff's failure to allege that the Patriots made an intentional omission in order to induce him to purchase tickets is fatal to his claim. As the Opposition fails even to address these pleading defects, they are conceded and the fraud claim must be dismissed.[7]

### 3.    Counts IV and V - the state and federal RICO claims

Plaintiff's response to the Patriots' argument for the dismissal of his state and federal RICO claims fails to address a single case cited by the Patriots or otherwise to address virtually any of the many bases for dismissal set forth in the Patriots' Memo.

Preliminarily, although the Complaint makes conclusory claims of the Patriots having violated each of the four subsections of § 1962, the Opposition sets forth no substantive argument to support any violation of subsections "a," "b," or "d."[8] Nor does the Complaint respond to, or even address, any of the cases that the Patriots cite to support the arguments that

---

[7] Contrary to plaintiff's contentions, the Patriots are not asserting that NFL teams are immune from liability for fraud, but rather only that plaintiff's pleading does not state a viable fraud claim. The Opposition cites to cases from the state courts of Ohio and California, each of which concerned claims of season ticket holders that the teams' owners induced the plaintiff season ticket buyers to purchase season tickets with *affirmative* misrepresentations that the teams would remain in the cities in which they were playing when the plaintiffs made their purchases. *Beder v. Cleveland Browns, Inc.*, 129 Ohio App. 3d 188, 195 717 N.E.2d at 722-23; *Charpentier v. Los Angeles Rams football Co.*, 89 Cal. Rptr. 2d 115, 120-122 (1999). The law cited in the Patriots' Memo makes clear that the actionability of a team affirmatively misrepresenting that it has no intention on moving its franchise to another city in order to induce its existing fans to buy season tickets is far different than a team not disclosing that it might violate a League rule of play. Memo pp. 11-12. In all events, the *Beder* and *Charpentier* cases do not involve allegations of concealment or omission, and hence their legal analyses are inapposite to plaintiff's allegations here.

[8] Plaintiff makes a passing, non-substantive reference to two of the otherwise unaddressed sections of RICO. The Opposition merely claims, without substantiation or statutory or case law support, that the "pattern, continuity and enterprise tests" that are referenced in the Opposition in connection with § 1962(c) are "equally applicable to Plaintiff's § 1962(a) and (b) claims." *See* Opp. p. 33.

7

the Complaint's rote recitation of the legal elements of a RICO claim are inadequate to state such a claim (*see* Memo pp. 14-15), that the conclusory allegations of violation of the mail and wire fraud statute fail to satisfy the requirement that all allegations of a RICO violation be particularized (*see* Memo pp. 19-20),[9] that the feeling plaintiff had when he learned well after all of the games at issue that the Patriots had videotaped coaches' signals is not the type of injury to business or property necessary for a RICO violation (*see* Memo pp. 20-21), and that the absence of any nexus between the Patriots' use of a video camera to tape coaches signals and either the outcome of any game or plaintiff's claimed loss of the value he paid for his tickets leaves plaintiff unable to satisfy the proximate cause element of his claim (*see* Memo pp. 21-22).

With respect to the one subsection of § 1962 that plaintiff does address, § 1962(c), the Opposition dedicates four pages to an analysis of *Bridge v. Phoenix Bond and Indem. Co.*, 128 S.Ct. 2131 (2008). In *Bridge*, the petitioner claimed that the respondent committed a § 1962(c) RICO violation by engaging in a pattern of racketeering involving mail fraud by deceiving a taxing authority to sell the respondent more discounted real estate tax liens than the pertinent statute allowed the respondent to purchase (thereby depriving the petitioners of the right to purchase the same). 128 S.Ct. at 2135-36. The trial court held that, since the fraudulent

---

[9] The Complaint fails even to identify a single writing supporting its mail and wire fraud claim, let alone meet the particularity requirement. *Bonavitacola Elec. Contractor, Inc. v. Boro Developers, Inc.*, 87 Fed. Appx. 227, 231 (3d Cir. 2003) ("Under Federal Rule of Civil Procedure 9(b), the circumstances constituting fraud must be pleaded with particularity . . . I*n the context of RICO mail fraud allegations, this means that the complaint must identify the purpose of the mailing within the defendant's fraudulent scheme and specify the fraudulent statement, the time, place, and speaker and content of the alleged misrepresentation. Put another way, the who, what, when and where details of the alleged fraud are required*.") (citations removed); *Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 659 (3d Cir. 1998) (*dismissing claim of fraudulent mailings where* "[t]he content of the mailings is described in reasonably specific terms, but *when, by whom, and to whom a mailing was sent, and the precise content of each particular mailing are not detailed*.") (emphases added).

8

misrepresentation was made to, and only directly relied upon by, the taxing authority, it was not actionable by the petitioners under RICO notwithstanding that they were injured by the scheme by having lost the opportunity to purchase discounted tax liens. *Id.* at 2136. The Supreme Court held otherwise. It held that "a plaintiff asserting a RICO claim predicated on mail fraud need not show . . . that it relied on the defendant's alleged misrepresentation." *Id.* at 2145.

The problem for plaintiff is that the *Bridge* holding is inapposite to any point made in the Patriots' Memo. Even if the Patriots accept (and the court finds plausible) plaintiff's allegation that he relied on the Patriots' failure to disclose an intent to tape signals in buying his ticket to the games,[10] that reliance does not save the claim. In arguing in their Memo that plaintiff did not state a claim under RICO, the Patriots nowhere asserted that plaintiff failed to allege that he relied on any alleged omission. The other points made in the RICO section of the Opposition also merely address arguments that the Patriots did not make. Specifically, the Opposition argues that "§ 1962(c) contains no requirement that the motive of the scheme be 'economic' in nature;" that "there is no synthetic limitation to the 'enterprise' requirement under § 1962(c);" and that the allegation that the Patriots had videotaped coaches' signals during each Jets game at Giants Stadium over a multi-year period satisfies the relatedness and continuity requirements of RICO. Opp. pp. 30-32. Without analyzing whether the cases that plaintiff cites for these propositions support them, suffice it to say that, even if they do, none of these points addresses the arguments for dismissal of the RICO claim addressed in the Patriots' Memo.

In the penultimate paragraph of its seven page RICO argument, plaintiff finally attempts to address one of the Patriots' arguments -- that the failure of the Complaint to identify a valid

---

[10] This assertion is made all the more implausible by the allegation that plaintiff is a season ticket holder. *See* Cmplt. ¶¶ 8, 55. So the 2007 Patriots v. Jets game at the Meadowlands was but one of eight regular season games that plaintiff bought in his season ticket package.

9

enterprise, or a person employed by or associated with a valid enterprise, is fatal to his claim for relief under § 1962(c). *See* Memo pp. 17-18; Opp. pp. 32-33. The only "enterprises" identified by plaintiff are the Patriots, the NFL, and the Jets. Cmplt. ¶ 99. Yet all plaintiff does to support its contention that these are valid RICO enterprises is make the conclusory contention that "Belichick manipulated the affairs of the Patriots as a racketeering enterprise" and that "the Patriots and Belichick manipulated the affairs of the NFL [and the Jets] as a racketeering enterprise." Opp. pp. 32-33. As detailed in the Memo, a claim for violation of § 1962(c) requires identification of a racketeering enterprise separate and distinct from the racketeering defendants. *See* Memo pp. 17-18. Plaintiff ignores the argument that, since the Patriots and the NFL are the racketeering defendants, they cannot be the required infiltrated "enterprises." The Opposition also ignores the Patriots' argument that, with no allegation that the Patriots directed or had the authority to direct the affairs of the Jets or the NFL, the Complaint fails adequately to allege, as required for a § 1962(c) claim, that either the NFL or the Jets are enterprises with which the Patriots were "employed or associated . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs." *See* Memo pp. 17-18.

The Opposition leaves the Patriots' well-reasoned arguments for dismissal of the RICO claims unanswered and thereby concedes the appropriateness of dismissing the RICO counts.

    **4.**    <u>**Count VI - Violation Of Plaintiff's Rights As A Third Party Beneficiary**</u>

The Opposition ignores the very analogous *Castillo v. Tyson* case (involving the claim that Tyson's disqualification for biting his opponent's ear deprived the plaintiffs of a claimed right to view a "legitimate heavyweight title fight" fought "in accordance with the applicable rules and regulations of the governing boxing commission"), holding that the trial court "aptly

10

rejected . . . as contrived" the plaintiffs' claim that they were third party beneficiaries of "one or more contracts the defendants entered into among themselves." Memo. p. 23.

Further, notwithstanding the contention in the Opposition that the Complaint adequately alleges the existence of a contract to which plaintiff is a third party beneficiary, the Complaint, in fact, merely *speculates* that there is such a contract. The allegation that plaintiff "is an intended third party beneficiary of the contracts between the New [England] Patriots and the New York Jets **_and/or_** the NFL" belies his claim that there is any actual such contract. The allegation of a Patriots contract with the Jets *and/or* the NFL is not an allegation of any particular contract and, as set forth in the Patriots' Memo, is too speculative to sustain a claim. Indeed, the Complaint is built on compound speculation, as it does not merely allege that some unidentified contract only possibly exists, but also speculates, with no good faith basis, that "the understanding that the [] Jets football games are to be played honestly and according to the rules and conditions is a material condition of [said supposed] contract" and that "the ticket holders are the intended third party beneficiaries of said contract." Complaint ¶¶ 103-104. In addition, since the underlying allegations are that the Patriots-Jets games *were* played according to the rules -- *i.e.* where there was an infraction found by the League it was penalized -- there is no breach for which a third party beneficiary to such a hypothetical contractual provision could even state a claim.

### 5. Count VII - Quasi-Contract/Unjust Enrichment

With respect to the claim for quasi-contract/unjust enrichment, the Opposition cites the same two cases as does the Patriots' Memo, *Iliadis v. Wal-Mart Stores, Inc.*, 191 N.J. 88, 110 (2007) and *Cohen v. Home Ins. Co.,* 230 N.J. Super. 72 (App. Div. 1989). Although the Opposition chooses to ignore it, both cases unequivocally state that no implied contract-type claim lies unless the plaintiff rendered performance for, or conferred a benefit on the defendant

11

*for which the plaintiff "expected remuneration."* *Id.* (emphasis added). Here, there is no allegation that plaintiff at any point conferred any benefit upon the Patriots for which he expected the Patriots to remunerate him. Nor would any such allegation make sense in the context of plaintiff's claim that he bought tickets in reliance on his assumption that the games would be played without violation of the rule against sideline videotaping of coaches signals.[11] The allegations very clearly do not support a quasi-contract/unjust enrichment claim.

### 6. Count VIII - New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 *et. seq.*

The New Jersey Consumer Fraud Act regulates sales and marketing practices, not NFL teams' game day conduct. In its Opposition, plaintiff argues that the Act's prohibition of fraud or deception "*in connection with* the sale or advertising of any merchandise or real estate" is so broad that it covers any conduct that has *anything* to do with the "merchandise" sold, here a license to attend an NFL game, including the videotaping of coaching signals. *See* Opp. pp. 37-38. The Opposition, not surprisingly, cites no case to support such a broad construction of the Act. In fact, New Jersey courts have clearly limited the application of the Act to unlawful sales and marketing practices. The New Jersey Supreme Court has explained that "[t]he Consumer Fraud Act . . . *is aimed basically at unlawful sales and advertising practices designed to induce consumers to purchase merchandise or real estate.*" *Daaleman v. Elizabethtown Gas Co.,* 77 N.J. 267, 270 (1978) (emphasis added). The Court continued, "the legislative concern was over

---

[11] Relying upon allegations not contained in the Complaint (about a revenue sharing agreement by which "the Patriots take 40% of the revenue from every game played against the Jets in Giants Stadium"), the Opposition asserts that the Jets' alleged agreement to share its revenues with the Patriots somehow constitutes a benefit conferred by plaintiff upon the Patriots. *See* Opp. p. 34. There is no law upholding such indirect benefit to be sufficient for the requisite of conferring a benefit. But even if there were, plaintiff would also have to assert that he conferred such a benefit on the Patriots with the expectation that he would, in turn, be remunerated by the Patriots. No such allegation has been or could plausibly be made.

12

sharp practices and dealings *in the marketing of* merchandise and real estate whereby the consumer could be victimized *by being lured into a purchase* through fraudulent, deceptive or other similar kind of selling or advertising practices." *Id.* at 271 (emphasis added).[12] Since the conduct of the Patriots about which plaintiff complains did not in any respect involve sales and marketing practices, the Complaint does not state a claim for violation of the Consumer Fraud Act.

Further, the Opposition acknowledges that where, as here, "the alleged consumer fraud consists of an omission, a plaintiff must show that the defendant acted with knowledge, thereby making <u>intent</u> an essential element of the fraud." *See* Opp. p. 36. *See also* Patriots' Memo p. 26 n. 14. The intent must be an intent to induce purchasers to buy merchandise (*see* note 12 *supra)* -- here it would be an intent to induce Jets fans to buy tickets. The Complaint alleges that the Patriots "inten[ded] to violate the agreed rules" and "to record and capture the Jew York Jets coaching and player signals" (*see* Cmplt. ¶ 70, 71) and, as noted above, that the Patriots did so "for the purpose of gaining competitive advantage." *Id.* at 73. The Complaint, however, nowhere alleges, and it would be illogical to allege, that the Patriots videotaped Jets' coaches' signals for the purpose of inducing Jets fans to buy tickets.

---

[12] *See also Joe Hand Promotions, Inc. v. Mills*, 567 F. Supp. 2d 719, 723-724 (D.N.J. 2008) ("to state a claim within the scope of the CFA, a plaintiff must allege facts that establish that the alleged fraudulent conduct induced or lured the plaintiff into purchasing merchandise or real estate"); *Talalai v. Cooper Tire & Rubber Co.,* 360 N.J. Super. 547, 561 (Law Div. 2001) (the CFA "was enacted to protect consumers from improper *selling practices* by 'prevent[ing] deception ... in connection with the sale and advertisement of merchandise and real estate.'") (quoting *Fenwick v. Kay Am. Jeep, Inc.,* 72 N.J. 372, 376-77 (1977)) (emphasis added); *D'Ercole Sales, Inc. v. Fruehauf Corp.,* 206 N.J. Super. 11, 22 (App. Div. 1985) ("The [CFA] ... is aimed basically at unlawful sales and advertising practices designed to induce consumers to purchase merchandise or real estate.") (citing *Daaleman*).

13

Likewise, as detailed in the Patriots' Memo (*see* p. 27), the Complaint makes no allegation that the videotaping proximately caused plaintiff to sustain the loss of the amount he paid for tickets. Nor, in response to this argument, does the Opposition cite any allegation that meets the proximate cause requirement. The Opposition refers to the Complaint making the conclusory allegation that the Patriots videotaped signals "for their own private benefit" and that the Jets fans collectively "spent well over $61 million on tickets to watch" the games at issue. *See* Opp. p. 40 (citing Cmplt. at ¶¶ 21, 63, 110). These are not, however, allegations of proximate cause. The failure of the Complaint to allege intent to deceive and proximate cause are, therefore, additional bona fide bases for dismissing plaintiff's Consumer Fraud Act claim.

### C. CONCLUSION

For all of the foregoing reasons, those set forth in the Patriots' memorandum of law in support of its motion to dismiss, and the original and the reply brief of the National Football League in support of its motion to dismiss, defendants The New England Patriots L.P. and Bill Belichick respectfully request that the Complaint be dismissed with prejudice in its entirety.

      *s/ Stephen M. Orlofsky*
Stephen M. Orlofsky
New Jersey Resident Partner
David C. Kistler
**BLANK ROME LLP**
301 Carnegie Center Drive, Suite 301
Princeton, NJ 08540
Telephone: (609) 750-7700
Facsimile (609) 750-7701

-and-

Daniel L. Goldberg (*admitted pro hac vice*)
Charles L. Solomont (*admitted pro hac vice* )
Lisa E. Kirby (*admitted pro hac vice*)
**BINGHAM MCCUTCHEN LLP**
150 Federal Street
Boston, MA 02110
Tel: (617) 951-8000
Fax: (617) 951-8736

*Attorneys for Defendants*

THE NEW ENGLAND PATRIOTS, LP AND
BILL BELICHICK

February 11, 2009