UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
CARL J. MAYER, ON BEHALF OF           )
HIMSELF AND ALL OTHERS SIMILARLY      )
SITUATED,                             )     No. 3:07-CV-04671 (GEB)
                                      )
                Plaintiffs,           )     ELECTRONICALLY FILED
                                      )
        v.                            )
                                      )
BILL BELICHICK, THE NEW ENGLAND       )
PATRIOTS, AND THE NATIONAL            )
FOOTBALL LEAGUE,                      )
                                      )
                Defendants.           )
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
NATIONAL FOOTBALL LEAGUE'S MOTION TO DISMISS**

                                  Robert Del Tufo
                                  Shepard Goldfein
                                  Paul M. Eckles
                                  Matthew M. Martino
                                  SKADDEN, ARPS, SLATE,
                                      MEAGHER & FLOM LLP
                                  Four Times Square
                                  New York, New York 10036-6522
                                  Telephone:  (212) 735-3000
                                  Facsimile:  (212) 735-2000

                                  *Attorneys for Defendant National Football League*

Dated:  February 13, 2009

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................1

ARGUMENT ...................................................................................................................2

I.      PLAINTIFF HAS FAILED TO OFFER ANY THEORY UNDER WHICH SPECTATORS AT A SPORTING EVENT MAY RECOVER FOR DISAPPOINTED EXPECTATIONS..............................................................................2

II.     PLAINTIFF HAS NOT ALLEGED A VALID CONTRACT WITH THE NFL OR ANY OTHER BASIS FOR A PURPORTED DUTY TO PLAINTIFF ......................4

CONCLUSION ................................................................................................................7

## TABLE OF AUTHORITIES

### CASES

American Furniture and Manufacturing, Inc. v. Value Furniture & Mattress Warehouse, No. L-2995-06, 2009 WL 88922 (N.J. Super. Ct. App. Div. Nov. 18, 2008) ................................................................................................... 5

Bowers v. Federation Internationale de l'Automobile, 461 F. Supp. 2d 855 (S.D. Ind. 2006), aff'd, 489 F.3d 316 (7th Cir. 2007) .................................................. 2

Castillo v. Tyson, 701 N.Y.S.2d 423 (App. Div. 2000) ...................................................... 3

Confer v. Custom Engineering Co., 952 F.2d 34 (3d Cir. 1991) ....................................... 5

Crowther v. Micucci, 192 A. 439 (N.J. Ch. 1937) ............................................................. 6

Goen Technologies Corp. v. NBTY, Inc., No. 05-4597 (WHW), 2007 WL 2595753 (D.N.J. Sept. 4, 2007) .................................................................. 5

Griffith v. Rittenhouse Park Community Association, 521 A.2d 1372 (N.J. Super. Ct. Ch. Div. 1986) ................................................................................. 5

Iliadis v. Wal-Mart Stores, Inc., 922 A.2d 710 (N.J. 2007) ............................................... 6

Murphy v. Implicito, 920 A.2d 678 (N.J. Super. Ct. App. Div. 2007) .............................. 4

Thalman v. Canon, 24 N.J. Eq. 127 (Ch. 1873) ................................................................. 6

Uston v. Resorts International Hotel, Inc., 445 A.2d 370 (N.J. 1982) .............................. 6

West v. IDT Corp., No. 01-4372 (WHW), 2008 WL 762459 (D.N.J. Mar. 19, 2008) ................................................................................................ 4

**PRELIMINARY STATEMENT**

Like his Amended Complaint, Mr. Mayer's brief in opposition to the NFL's motion to dismiss is long on rhetoric and short on substance. His lengthy and untimely submission does nothing to salvage his baseless claims.[1] Mr. Mayer has provided no meaningful distinction of the uniform case law finding that plaintiffs cannot recover based on a failure to satisfy the expectations of spectators – including expectations that a particular contest will be conducted in accordance with applicable rules and regulations. Nor has Plaintiff offered any authority to the contrary.

Likewise deficient are Mr. Mayer's attempts to save his "breach of contract" claim against the NFL based on its alleged destruction of videotapes purportedly evidencing the Patriots violating a League rule in NFL games. Plaintiff continues his refrain that the NFL owes some unspecified "duty" to ticket holders to preserve evidence used in investigating alleged rule infractions by NFL teams. Mr. Mayer cannot, however, overcome his failure to plead a valid contract between Plaintiff and the NFL, the requisite elements of "quasi-contract" or unjust enrichment, or any other legal basis from which such a "duty" might arise.

Accordingly, the Amended Complaint, including Plaintiff's claim against the NFL, should be dismissed.[2]

---

[1] Mr. Mayer filed his Memorandum in Opposition to Defendant National Football League's Motion to Dismiss on January 8, 2009, eight days after the December 31, 2008 deadline ordered by the Court. (See November 10, 2008 Order regarding briefing schedule.) In a January 8, 2009 letter to the Court, Mr. Mayer explained that his untimely filing was due to an illness during the week prior to the deadline. The NFL notes, however, that Mr. Mayer managed to file a timely opposition to the Patriots' motion to dismiss, and at no time did Mr. Mayer contact the NFL's counsel to request an additional extension of time for his Opposition.

[2] In order to avoid duplication, the NFL additionally joins in the Reply of Defendants The New England Patriots, LP and Bill Belichick in Support of Their Motion to Dismiss ("Patriots'
*(cont'd)*

**ARGUMENT**

I.  **PLAINTIFF HAS FAILED TO OFFER ANY THEORY UNDER WHICH SPECTATORS AT A SPORTING EVENT MAY RECOVER FOR DISAPPOINTED EXPECTATIONS**

In its opening brief, the NFL demonstrated that courts have overwhelmingly rejected claims substantially similar to those here. (See NFL Mem. at 4-6.) In his opposition, Mr. Mayer contends that this lawsuit is "not about subjective fan expectations, but instead involves objective violations of the NFL's own rules and the contract and fraud laws that protect ticketholders [sic]." (Opp. to NFL at 6.) This case is different, Mr. Mayer urges, because it is based on alleged rule violations that "destroy[ed] the [ticket holder's] basic expectation of honest play." (Id. at 10). However, Mr. Mayer's attempt to hide under the veil of "objectivity" is not a novel tactic and cannot provide him an escape from well-established law.

In Bowers v. Federation Internationale de l'Automobile, 461 F. Supp. 2d 855, 859-60 (S.D. Ind. 2006), aff'd, 489 F.3d 316 (7th Cir. 2007), the plaintiffs made a virtually identical assertion that their claims were based not on subjective expectations but on "objectively verifiable contractual expectations" that the defendants would "abide by their own rules, contracts, and representations concerning the presentation of a regulation race . . . ." The court rejected this contention and concluded that the plaintiffs' attempt to frame their claims as "objective" contract expectations was nothing more than a "red herring." Id. at 560. Indeed, in holding that the plaintiffs' allegations were insufficient to state a valid cause of action, the court observed:

Plaintiffs' broad assertion that as spectators they have an "objective" basis for a

---

*(cont'd from previous page)*
Reply"), which distinguishes many of the cases upon which Mr. Mayer relies and otherwise sets forth additional reasons for dismissal of the Amended Complaint.

>lawsuit anytime a particular sports' governing rules are broken is not plausible; if that were the law, spectators would have a viable cause of action permitting challenges to some part or another of almost every single sporting event requiring a ticket for admission.  We suspect that a knowledgeable and neutral observer (a hypothetical construct if there ever was one) would be hard pressed, after watching any professional (or amateur) sporting event, not to discern at least one "blown call."  In fact, it has become a post-event ritual for fans of a losing team/driver/competitor to cite as the cause of defeat an official decision that "should have gone the other way" and to relive the could-have, should-have, would-have scenarios that play out if only the rules had been enforced the way the disappointed fans believe they should have been.  Grousing about the judgment calls/rulings of officials in a sporting event is part and parcel of being a sports fan; and it most assuredly is not a legitimate basis for claiming a legally actionable injury.
>
>Plaintiffs' claimed "objective" expectations that Defendants would and ought to abide by their own rules actually reflect their "subjective" opinions as to which rules they believe should have been enforced. . . .

Id. at 861.

Similarly, here, if Mayer were correct that an action arises anytime a fan's "basic expectation of honest play" is not met, the courts would be overrun with cases alleging harm to a spectator whose favorite team lost as a result of a rule violation that was not properly addressed by officials, or injury to a fan who felt "cheated" by a player who gained an unfair advantage by circumventing league rules and was only later discovered to have violated them.  It is therefore not surprising that the theory upon which Mr. Mayer's claims are based "has been unanimously rejected by every court to address it," id. at 862-63, and Mr. Mayer has offered no reason for this Court to deviate from that well-settled case law.[3]  Accordingly, Mr. Mayer's Amended Complaint should be dismissed in its entirety.

---

[3]   Nor has Mr. Mayer identified any meaningful distinction of Castillo v. Tyson, 701 N.Y.S.2d 423 (App. Div. 2000).  Mr. Mayer argues that the court in Castillo dismissed the action because a disqualification of a fighter for violating boxing rules was itself an outcome permitted by the boxing commission's rules, while Plaintiff's cause of action here is based on a purported violation of League rules.  In fact, the discipline of a team for violating League rules is also something contemplated by NFL rules, but Mr. Mayer's argument misses the more relevant point.
*(cont'd)*

3

## II.   PLAINTIFF HAS NOT ALLEGED A VALID CONTRACT WITH THE NFL OR ANY OTHER BASIS FOR A PURPORTED DUTY TO PLAINTIFF

In the Amended Complaint's sole specific claim against the NFL, Mr. Mayer alleges that the NFL breached its duty to him as a Jets ticket holder to preserve videotapes that Plaintiff alleges contained evidence of violations of NFL rules by the Patriots.  (Am. Compl. ¶¶112-128; Opp. to NFL at 10-13.)  Mr. Mayer asserts that this claim sounds in either contract or quasi-contract.  (Am. Compl. ¶127; Opp. to NFL at 10-11.)  Plaintiff, however, has failed to adequately plead the elements of either claim.

In order to establish his breach of contract claim against the NFL under New Jersey law, Mr. Mayer must plead and ultimately prove that:  (i) the parties entered into a valid contract; (ii) the NFL failed to perform its obligations under the contract; (iii) Mr. Mayer performed under the contract; and (iv) Plaintiff sustained damages as a result of the NFL's breach.  See West v. IDT Corp., No. 01-4372 (WHW), 2008 WL 762459, at *3 (D.N.J. Mar. 19, 2008); Murphy v. Implicito, 920 A.2d 678, 689 (N.J. Super. Ct. App. Div. 2007).  Despite his unsupported contentions to the contrary, Plaintiff has failed to plead even the existence of a valid contract between Plaintiff and the NFL.

Mr. Mayer does not and cannot allege that the tickets he purchased created a contract with the NFL, let alone a contract requiring the NFL to preserve evidence from an investigation of a rule violation.  Instead, Mr. Mayer offers only the ipse dixit that "the NFL has assumed a

---

*(cont'd from previous page)*
The Castillo court's focus was not on the violation of rules per se but on the expectations of spectators.  The court noted that because disqualification was a conclusion provided for by the governing commission, it was "a possibility that a fight fan [could] reasonably expect." Id. at 424.  Likewise here, it is certainly within reasonable expectations of football fans that an NFL team could violate League rules during a game and as a result be disciplined following a League investigation.

4

duty to protect ticketholders' [sic] contractual rights that are breached or potentially breached by fraudulent team management practices." (Am. Compl. ¶125; Opp. to NFL at 13.) Mr. Mayer never identifies the "contract" that is the source of such "contractual rights." Mr. Mayer fails to allege that he and the NFL manifested any mutual intention to be bound by any agreement or had come to a "meeting of the minds" on any particular terms, which is an "essential element to the valid consummation of any contract." Am. Furniture and Mfg., Inc. v. Value Furniture & Mattress Warehouse, No. L-2995-06, 2009 WL 88922, at * 2 (N.J. Super. Ct. App. Div. Nov. 18, 2008) (internal quotation marks omitted). Nor does he bother even addressing any of the basic elements of a valid and enforceable contract – an offer, acceptance, and consideration. See Goen Tech. Corp. v. NBTY, Inc., No. 05-4597 (WHW), 2007 WL 2595753, at *3 (D.N.J. Sept. 4, 2007).[4]

  Mr. Mayer thus argues in the alternative that he has pled a claim in quasi-contract. (See Opp. to NFL at 13-15.) Mr. Mayer's quasi-contract theory fails for the same reason as his contract theory: he cannot identify the source of any "duty" flowing from the NFL to Plaintiff. Mr. Mayer again relies on the above-quoted conclusory allegation in paragraph 125 of the Amended Complaint, but he fails to offer any authority that such naked assertions are sufficient to give rise to a "quasi-contractual duty." (Opp. to NFL at 14.) All of the cases upon which Plaintiff relies for the existence of such a duty involve fiduciary relationships. (See Opp. to NFL at 14-15, citing Confer v. Custom Eng'g Co., 952 F.2d 34, 39-41 (3d Cir. 1991) (Seitz, J., concurring) (fiduciary duty of corporate officers under ERISA); Griffith v. Rittenhouse Park Cmty. Ass'n, 521 A.2d 1372, 1374 (N.J. Super. Ct. Ch. Div. 1986) (fiduciary duty of "trustee and

---

[4]  Mr. Mayer actually admits that he has not pled a "conventional contract action." (Opp. to NFL at 13.)

controller" of homeowners' association to homeowners to provide lawn mowing services); Crowther v. Micucci, 192 A. 439, 443 (N.J. Ch. 1937) (fiduciary duty of "confidential relationship" between "physician (healer) and patient" in context of dispute over decedent's gift to "friend and healer"); Thalman v. Canon, 24 N.J. Eq. 127 (Ch. 1873) (fiduciary duty of "trustee" or "agent" to protect principal's interests in collecting debt).) Mr. Mayer, though, has not alleged any basis for a fiduciary relationship between the NFL and ticket holders that would impose any legal duty upon the NFL – nor could he.[5]

In fact, Plaintiff has pled none of the requisite elements of a quasi-contractual claim. See Iliadis v. Wal-Mart Stores, Inc., 922 A.2d 710, 723 (N.J. 2007) (citation omitted) (claim in quasi-contract requires plaintiff to show that defendant received benefit from plaintiff that is unjust for him to retain without compensation, and that plaintiff expected remuneration from defendant at time he performed or conferred benefit on defendant). Mr. Mayer does not contend that he

---

[5] Plaintiff also curiously devotes considerable attention to Uston v. Resorts International Hotel, Inc., 445 A.2d 370 (N.J. 1982). As explained more fully in the Patriots' Reply, Uston addressed a casino's right to expel a card counter from its blackjack tables. The New Jersey Supreme Court considered the interplay among the "common law right" of public accommodations "to exclude patrons without good cause," the "common law right of reasonable access to public places," and the New Jersey Casino Control Commission's regulations relating to blackjack. Id. at 372. It is not clear how Plaintiff believes Uston is relevant to his claim against the NFL. To the extent Plaintiff suggests that Uston somehow supports his claim that the NFL owes him a duty, whether contractual or quasi-contractual, Plaintiff is wrong. The case did not even involve tickets to an event, much less address whether the sale of tickets somehow creates a duty to purchasers. To the extent Plaintiff argues that Uston minimizes the holdings and reasoning of Bowers and Castillo, Plaintiff is again wrong. The decision in Uston did not address and does not in any way relate to the viability of a cause of action based on the disappointed expectations of spectators.

conferred any benefit upon the NFL, that the NFL retained any benefit conferred by him, or that he ever expected any remuneration from the NFL.[6]

Accordingly, Plaintiff's claim against the NFL for breach of contract or quasi-contract under Count IX of the Amended Complaint must be dismissed.

## CONCLUSION

For the foregoing reasons and the reasons stated in its Memorandum of Law in Support of Motion to Dismiss, Defendant National Football League respectfully requests that the Amended Complaint be dismissed with prejudice.

Dated: February 13, 2009

Respectfully submitted,

_s/ Robert Del Tufo____
Robert Del Tufo
Robert.DelTufo@skadden.com
Shepard Goldfein
Shepard.Goldfein@skadden.com
Paul M. Eckles
Paul.Eckles@skadden.com
Matthew M. Martino
Matthew.Martino@skadden.com
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036-6522
Telephone:  (212) 735-3000
Facsimile:  (212) 735-2000

*Attorneys for Defendant National Football
   League*

---

[6] Mr. Mayer's assertion that there has been no waiver of a judicial remedy in favor of arbitration is another red herring – indeed, Plaintiff's argument highlights the absence of any contract between the NFL and ticket holders.

7